# Illinois Official Reports

## Supreme Court

***People v. Roddis*, 2020 IL 124352**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RYAN M. RODDIS, Appellee. |
| Docket No. | 124352 |
| Filed<br>Rehearing denied | January 24, 2020<br>March 23, 2020 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Macon County, the Hon. Thomas E. Griffith, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Michael M. Glick and Michael L. Cebula, Assistant Attorneys General, of Chicago, of counsel), for the People.<br><br>James E. Chadd, State Appellate Defender, John M. McCarthy, Deputy Defender, and Ryan R. Wilson, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellee. |

Justices

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Burke and Justices Thomas, Kilbride, Karmeier, Theis, and Neville concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial in the circuit court of Macon County, defendant, Ryan Roddis, was convicted of aggravated domestic battery (720 ILCS 5/12-3.2(a)(1), 12-3.3(a) (West 2010)) and sentenced to six years in prison. Defendant filed a *pro se* motion for reduction of his sentence that also alleged ineffectiveness of his trial counsel. That motion was dismissed as untimely.

¶ 2    On appeal, defendant argued, *inter alia*, that the trial court erred in dismissing his *pro se* posttrial claim of ineffective assistance of counsel without conducting a hearing in compliance with *People v. Krankel*, 102 Ill. 2d 181 (1984). The appellate court upheld defendant's conviction and sentence yet remanded to the trial court to conduct a hearing in accordance with *Krankel*.

¶ 3    On remand, the trial court conducted what it deemed a "pre-inquiry *Krankel* hearing" to determine if the allegations were founded, at which point the court would appoint separate counsel and proceed to a "full-blown" *Krankel* hearing. The court conducted a hearing with defendant and his previous counsel, giving defendant the opportunity to elaborate on his allegations and subsequently allowing counsel to respond based on their representation of defendant. Ultimately, the court ruled that the allegations did not establish ineffective assistance of counsel.

¶ 4    Defendant appealed, asserting that the trial court erred in addressing the merits of his claim beyond determining whether to appoint new counsel for further proceedings. The appellate court, finding that the trial court should not have decided the merits of defendant's claim at that initial hearing, reversed and remanded. 2018 IL App (4th) 170605. For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the trial court.

¶ 5                                    BACKGROUND
¶ 6                              Defendant's Bench Trial
¶ 7    In June 2012, the State charged defendant with aggravated domestic battery (720 ILCS 5/12-3.3 (West 2010)), alleging that he pushed Meghan Collins's head into a door and struck her, resulting in a laceration requiring stitches. Defendant, initially represented by Phillip Tibbs, fired Tibbs six months before trial and ultimately retained Baku Patel as counsel.

¶ 8    At the 2013 bench trial, the State called Collins, who testified that in June 2012 she and defendant were living together when an argument ensued. When Collins asked defendant to leave, he responded by picking up a couch pillow and attempting to throw it out the apartment's front door. Collins pushed the cushion out of defendant's hands. Defendant then pushed Collins's head, which struck the corner of the apartment door, resulting in a laceration. Collins

called the police and was eventually taken to the hospital, where staples were used to close the head laceration.

¶ 9　　Decatur police officer Scott Bibby responded to Collins's apartment the day of the incident. He testified that defendant told him that, during the argument, defendant threw a couch cushion at Collins's head to get her to stop yelling, which accidentally hit Collins, knocking her head into the door. Collins told Bibby that defendant punched her in the head.

¶ 10　　An emergency room physician testified that she treated Collins with three staples to close a two-inch laceration to the head, which Collins reported was caused by someone grabbing her head and hitting it against a door.

¶ 11　　Although Collins originally told police that defendant struck her in the head multiple times, through cross-examination she admitted that was untrue, as defendant had only pushed her head once. She also testified that, since the incident, she had communicated with defendant via phone, text messages, and e-mails and told him she believed that he did not intend to hit her head against the door or cause her injury. Collins additionally admitted via cross-examination that she was currently being charged with filing a false police report in an unrelated matter.

¶ 12　　Defendant testified that Collins wanted him to leave the apartment and started throwing his belongings out the front door. In response, he decided to throw his couch outside and grabbed a seat cushion to toss it out the door. The cushion struck Collins instead, causing the injury. He testified that he never intended to harm Collins and he never pushed her head into the door.

¶ 13　　Patel asked defendant on direct examination if Collins had contacted him since the incident. Defendant responded that Collins contacted him "all the time," including threatening to testify against him unless he gave her money. Defendant testified that Collins's texts also included her admission that she thought the injury was an accident.

¶ 14　　The trial court found defendant guilty of aggravated battery, sentencing him to six years in the Illinois Department of Corrections.

¶ 15　　　　　　　　　　　　　　　　First Appeal

¶ 16　　Defendant subsequently filed a *pro se* motion for reduction of sentence that also alleged ineffective assistance of counsel. The trial court denied the motion as untimely.

¶ 17　　Defendant appealed, arguing that (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt and (2) the trial court erred by dismissing his *pro se* posttrial claims of ineffective assistance of counsel without addressing them. The appellate court affirmed defendant's conviction and sentence but remanded for a hearing on defendant's claims of ineffective assistance of counsel in compliance with *Krankel* and its progeny. 2016 IL App (4th) 160631-U.

¶ 18　　　　　　　　　　　　　Proceedings on Remand

¶ 19　　On remand, the trial court appointed public defender Rodney Forbes to represent defendant during *Krankel* proceedings to consider the claims of ineffective assistance of counsel and set a date for a "pre-inquiry *Krankel* hearing." Forbes, however, noted that he was not normally appointed at a pre-*Krankel* inquiry. He also notified the court about a potential conflict of interest because he briefly represented Collins in an unrelated but contemporaneous case. The

court allowed Forbes to withdraw over defendant's objection, finding it was unnecessary to appoint counsel until after the court had conducted the preliminary *Krankel* inquiry.

¶ 20   The trial court scheduled a hearing, at which time it stated it would examine defendant's allegations and, if the allegations against counsel were "well-grounded," the court would then reappoint Forbes or another attorney to represent defendant.

¶ 21                              January 2017 Hearing

¶ 22   At the "pre-inquiry *Krankel* hearing," defendant, Tibbs, Patel, and the State were present. The trial court again explained that it would allow defendant to elaborate on his allegations of ineffective counsel, allow either of his attorneys to respond where appropriate, and then determine the validity of the claims. The court noted that, "if the allegations are denied, I'll probably go ahead and appoint you counsel" to "deal with the rest of your motion for reduction of sentence." Conversely, if the court concluded the allegations had possible merit, it would appoint separate counsel and "proceed to a full-blown *Krankel* hearing."

¶ 23   Defendant primarily alleged ineffective assistance of his trial counsel for failure to impeach Collins with various text messages. The text messages to defendant indicated that Collins believed the incident was an accident and offered to speak to Patel or testify in a certain manner if defendant paid Collins $1000.

¶ 24   Patel responded that he got Collins to admit on cross-examination that she believed defendant did not knowingly harm her and that she specifically used the word "accident." He explained that, once Collins testified that she believed the degree of harm she sustained was accidental, there was nothing to impeach. He also noted that he cross-examined Collins about falsely telling police that defendant punched her.

¶ 25   Defendant also alleged that Tibbs "tricked" him into waiving his jury trial, by indicating that counsel personally knew the trial judge and could get his charges lowered once the jury trial was waived. Tibbs denied ever making such representations.

¶ 26   At the conclusion of the hearing, the trial court determined that defendant's allegations did not amount to ineffective assistance of counsel and thus would "not proceed to a full *Krankel* hearing." The court then explained that it would appoint counsel to represent defendant on his remaining claims in the motion to reconsider sentence, which it ultimately denied.

¶ 27                                 Second Appeal

¶ 28   Defendant again appealed, arguing that the trial court erred by addressing the final merits of his ineffective assistance of counsel claim instead of determining whether his case suffered from "possible neglect" and appointing new counsel to address the merits going forward. The appellate court agreed, finding that a trial court cannot reach the merits of an ineffective assistance claim in a *Krankel* hearing but can only determine whether it is appropriate to appoint new counsel to investigate those claims when "possible neglect" has been demonstrated.

¶ 29   The appellate court reversed and remanded with directions to appoint new counsel. 2018 IL App (4th) 170605, ¶ 102. This court granted the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018).

- 4 -

¶ 30                                   ANALYSIS

¶ 31    We are presented with the question of whether, upon a defendant's *pro se* posttrial allegations of ineffective assistance of counsel triggering the trial court's duty to conduct a *Krankel* inquiry, the court may properly consider both the factual and legal merits of the claim in its determination whether to appoint the defendant new counsel. The State challenges the appellate court's determination that trial courts should only consider the factual merits of a defendant's *pro se* allegations of ineffective assistance of counsel. Defendant maintains that the court erred by considering the legal merits of the ineffective assistance of counsel claim during the preliminary *Krankel* inquiry.

¶ 32                                *Krankel* Inquiries

¶ 33    The issue of whether the trial court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo*. *People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 34    A *pro se* posttrial motion alleging ineffective assistance of counsel is governed by the common-law procedure developed by this court in *Krankel*, 102 Ill. 2d 181, and refined by its progeny. *People v. Ayres*, 2017 IL 120071, ¶ 1. The procedure encourages the trial court to fully address these claims and thereby narrow the issues to be addressed on appeal. *People v. Jocko*, 239 Ill. 2d 87, 91 (2010).

¶ 35    Under the common-law procedure, a *pro se* defendant is not required to file a written motion but need only bring his or her claim to the trial court's attention. *Ayres*, 2017 IL 120071, ¶ 11. New counsel is not automatically appointed in every case when a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. *People v. Moore*, 207 Ill. 2d 68, 77 (2003). Rather, when a defendant makes such a claim, the court should first examine the factual basis of the defendant's claim. *Id.* at 77-78. If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. *Id.* at 78. However, if the allegations show possible neglect of the case, new counsel should be appointed. *Id.*

¶ 36    New counsel would then represent the defendant at the hearing on the *pro se* ineffective assistance of counsel claim. Appointed counsel can independently evaluate the claim and avoid the conflict of interest that trial counsel would have in trying to justify his or her own actions contrary to the defendant's position. *Id.* (citing *People v. Chapman*, 194 Ill. 2d 186, 230 (2000)).

¶ 37    In arriving at its holding in this case, the appellate court observed that numerous courts have misinterpreted how to conduct *Krankel* hearings and the proper procedures required when a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel. 2018 IL App (4th) 170605, ¶ 43 ("[T]he trial court misunderstood both the purpose of a *Krankel* hearing and how one should be conducted. Because we have seen too many cases in which trial courts suffer from the same confusion, we believe a thorough discussion of *Krankel* hearings might be helpful."). Both acknowledging this possibility and recognizing the abundance of this court's decisions that have contributed to the refinement of the *Krankel* procedure, we will limit our analysis to consideration of our opinions applicable to the matters at issue.

¶ 38               The Factual or Legal Merits of a *Krankel* Claim

¶ 39      The State contends that it is settled law that trial courts may indeed consider the merits of a defendant's *pro se* allegations of ineffective assistance of counsel in their entirety at the preliminary inquiry stage of the *Krankel* proceedings. The State cites various cases that hold that a trial court does not appoint new counsel when the defendant's claim "lacks merit." See *Jocko*, 239 Ill. 2d at 92 (stating new counsel need not be appointed if " 'the claim lacks merit' " (quoting *Moore*, 207 Ill. 2d at 78)); *People v. Simms*, 168 Ill. 2d 176, 199 (1995) (stating new counsel is unnecessary if defendant's claim "is meritless"); *People v. Sims*, 167 Ill. 2d 483, 518 (1995) (concluding new counsel need not be appointed if "there is no validity to the defendant's claim").

¶ 40      The State posits that this terminology necessarily contemplates a court's consideration of both the factual *and* legal merits of the claim prior to the determination of whether to appoint new counsel. In support, it lists a number of cases, yet it relies primarily on this court's decision in *Chapman*. We agree that *Chapman* is particularly illuminating to the present issue. In that case, the defendant, Reginald Chapman, was charged with first degree murder, aggravated kidnapping, and concealment of a homicidal death in the killings of Angela Butler, his former paramour, and Christopher Butler, their shared infant son. Separate juries found the defendant guilty of first degree murder on each count. *Chapman*, 194 Ill. 2d at 196-97.

¶ 41      The State's evidence at trial revealed that the victims' bodies were recovered by police floating in the Calumet Sag Channel in Alsip, Illinois, and bound to free weights of varying sizes by orange and black electrical cord. The last person to see Angela and Christopher alive testified that the defendant approached their car as they waited for family in a local grocery store parking lot. After Angela gave the infant to the defendant, he shoved her into his car. Her companion asked where they were going and noted that Angela seemed frightened and the defendant seemed upset. *Id.* at 198-99.

¶ 42      Pursuant to the murder investigation, police arrived at the defendant's apartment, where he was with his current girlfriend. The defendant initially denied owning any weight-lifting equipment, then told officers he recently sold the equipment to an individual named "Foy." The defendant subsequently told police he had given the equipment to his brother. *Id.* at 199.

¶ 43      After waiving his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), the defendant made a statement to an assistant state's attorney that he and Angela had argued, culminating with him striking her with his hand, fist, and a baseball bat. He additionally stated that he put Angela in the Calumet Sag Channel and cried when asked where Christopher was. At trial, his current girlfriend also testified that, upon entering the defendant's apartment the day after Angela's disappearance, certain items were missing, including a long orange and black electrical cord and his weight-lifting equipment. Evidence recovered from the defendant's car included a pair of infant shoes and a blanket, both splattered with blood, and a baseball bat. The genetic material extracted from the blood matched that of Angela Butler. *Chapman*, 194 Ill. 2d at 200-01.

¶ 44      Following the jury's convictions, the defendant filed a *pro se* posttrial motion alleging, *inter alia*, ineffective assistance of trial counsel during both trial and sentencing. The defendant specifically argued that the attorneys were ineffective in " 'failing to provide competent representation, failing to act with reasonable diligence, and [for engaging in] conduct involving dishonesty, fraud, deceit, and misrepresentation.' " *Id.* at 228.

¶ 45        The trial court, after receiving the defendant's *pro se* motion, repeatedly inquired as to the precise allegations of ineffectiveness. Defendant ultimately stated that trial counsel should have checked his phone and bank records from the day that Angela and Christopher disappeared. Despite testimony from Angela's companion as to what he witnessed firsthand, the defendant contended that his phone and bank records could show that, on the day of the victims' disappearance, he was " 'at a cash station *** withdrawing money.' " *Id.* at 229. When the court asked what that would prove, the defendant replied it would show that " 'if I was at a cash station or the house instead of traveling throughout the whole state searching for someone and preconceiving a crime to the victim that I don't even know where they're at in the first place.' " *Id.* The court denied the *pro se* posttrial motion. In reviewing counsel's performance and finding it effective, the court stated that the defendant's proffered evidence

> " 'would not alter the *** verdict of guilty in this particular case, because the evidence was overwhelming in this particular case. And as far as the mitigation and aggravation, it would not alter my opinion, based on the facts and circumstances of the case, considering both the aggravation and mitigation, that the death sentence is the appropriate sentence in this particular case.' " *Id.*

¶ 46        On appeal, the defendant argued that the trial court erred in evaluating the merits of his allegations rather than first determining whether to appoint new counsel to argue his ineffective assistance claim. In rejecting the defendant's argument, this court found that the defendant's assertions were conclusory and that the trial court thoroughly explored the matters raised in the defendant's motion. Like the trial court, this court noted that "the record shows that the fact that defendant withdrew money on the day that the victims disappeared would not have had any bearing on the case. This claim simply has no merit." *Id.* at 231.

¶ 47        We find the *Chapman* trial court's statement akin to a conclusion that the merits of the State's case were so firmly founded and sufficient that, even if the factual bases for the defendant's claim were true, they would not have altered the resulting conviction. The statement evinces a consideration of the final merits of the defendant's case, while also recognizing the frivolity of Chapman's claims. In subsequently finding the *Chapman* trial court's proceedings proper, this court arrived at the same conclusion.

¶ 48        Defendant's and the appellate court's position, however, would require that the trial court examine only the factual basis in determining whether to appoint new counsel. Under this proposition, if the trial court in *Chapman*, for example, had ascertained that the defendant asked trial counsel to check his phone and bank records, which counsel declined to do because of its utter lack of utility, defendant's position would still require appointing new counsel to address the spurious claim. We disagree with this proposition.

¶ 49        In support of his argument, defendant relies on the oft-cited passage from *Moore*, 207 Ill. 2d at 77-78:

> "[W]hen a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim *lacks merit* or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." (Emphasis added.)

Defendant points out that, although numerous cases have cited this passage, this court has not explicitly defined the term "lacks merit."

¶ 50    Defendant asserts that a plain reading of this passage indicates that the "lacks merit" language relates only to the factual merits of a defendant's claim and not the end legal merits. We disagree. *Moore* holds that a trial court *first* examines the factual basis of the claim, not that a trial court *only* examines the facts. A further examination of *Moore* in its entirety supports this interpretation.

¶ 51    In that case, the defendant was convicted of first degree murder and then filed a *pro se* motion for appointment of counsel other than the public defender. The motion also alleged ineffective assistance of trial counsel. *Id.* at 70. At the posttrial hearing, noting that a state appellate defender would be appointed on the defendant's appeal, the trial court declined to separately consider the defendant's *pro se* motion alleging ineffective assistance of counsel. The court had similarly refused to consider the defendant's motion for appointment of other counsel based on ineffectiveness during trial. *Id.* at 74.

¶ 52    On appeal, this court declared that "the trial court neither 'denied' the defendant's *pro se* posttrial motion nor found the allegations therein to be 'meritless' "; rather the trial court conducted no inquiry of *any* sort into defendant's allegations. *Id.* at 75. We noted that *Krankel*, at a minimum, required more.

¶ 53    This court went on to explain that, during the *Krankel* inquiry, "some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is *** usually necessary in assessing what further action, if any, is warranted on a defendant's claim." *Id.* at 78. Additionally, the court can "base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Id.* at 79.

¶ 54    Rather than placing a limit on what a trial court can consider during the inquiry into a defendant's *pro se* allegations of ineffective assistance of counsel, *Moore* establishes a minimum threshold for the court's *Krankel* consideration. Instead of defendant's suggestion that a court can *only* consider the factual basis of the claim, *Moore* holds that, at the least, a consideration of the facts is necessary.

¶ 55    Again, defendant argues that few courts have specifically examined what the "lacks merit" language entails. We find it both more accurate and more pertinent to note that we have never distinguished between factual and legal merits when discussing whether a claim of ineffective assistance "lacks merit."

¶ 56    The trial court, most familiar with the proceedings at issue, remains best situated to serve the interests of judicial economy by extinguishing conclusory claims. We decline to unduly limit the most effective arbiter between patently frivolous claims and those showing possible neglect. The court can "base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Id.* Our previous decisions assert the same.

¶ 57    In *People v. Coleman*, 158 Ill. 2d 319 (1994), this court examined a trial court's preliminary *Krankel* inquiry where the defendant was convicted of first degree murder, armed robbery, and home invasion. The defendant subsequently alleged ineffective assistance of trial counsel for, *inter alia*, failing to file several pretrial motions, including a motion to quash arrest, a motion for a preliminary hearing, and a motion to suppress evidence. *Id.* at 350. The court conducted a preliminary investigation and found the arguments to be baseless and spurious. *Id.* at 350-51.

¶ 58      On review, this court found that a motion to quash arrest would have been improper because the defendant was not arrested but rather was charged after turning himself in for a separate murder. No motion for preliminary hearing was filed because the defendant was indicted via grand jury. Further, a motion to suppress evidence would have been inappropriate because no evidence was obtained from the defendant or anywhere he would have had a possessory interest. *Id.* at 351.

¶ 59      This court found "that the trial court could properly conclude that defendant's claims had no basis and were thus spurious because defendant did not allege anything of which the trial court did not have firsthand knowledge." *Id.* at 352.

¶ 60      As *Chapman* and *Coleman* demonstrate, following convictions resulting in significant sentences, a trial court will oftentimes be confronted with meritless *pro se* claims. In *Chapman*, although the evidence that the defendant effectively abducted the victims was undisputed, the defendant claimed his counsel's failure to investigate phone and bank records evinced constitutionally inadequate representation. *Chapman*, 194 Ill. 2d at 228-29. In *Coleman*, the defendant's claim was based upon motions that were not even applicable to his case. *Coleman*, 158 Ill. 2d at 351.

¶ 61      We find that, even in preliminary *Krankel* inquiries, a trial court must be able to consider the merits *in their entirety* when determining whether to appoint new counsel on a *pro se* posttrial claim of ineffective assistance of counsel. This serves both the ends of justice and judicial economy.

¶ 62                                      Appellate Court's Proposed Framework

¶ 63      In reviewing whether the trial court properly considered the merits in denying defendant's *pro se* posttrial claim of ineffective assistance of counsel, the appellate court seized upon language in this court's opinion in *People v. Johnson*, 159 Ill. 2d 97, 126 (1994), to assert that there are four primary ways that a trial court may conclude that a claim lacks merit when conducting a *Krankel* inquiry. 2018 IL App (4th) 170605, ¶ 65. The appellate court held that when the court determines the ineffective assistance claim is (1) conclusory, (2) misleading, (3) legally immaterial, or (4) pertaining solely to an issue of trial strategy, it may conclude that a claim lacks merit. *Id.*

¶ 64      We now clarify that *Johnson* did not establish a framework composed of the four main reasons to deny a defendant's *pro se* posttrial claim of ineffective assistance of counsel without appointing new counsel. In that case, we "scrutinized the transcript of the *** post-trial motion hearing and we [found] that the trial court conducted an adequate probe into the allegations of ineffective assistance of trial counsel." *Johnson*, 159 Ill. 2d at 126. As this court did in concluding that the *Johnson* trial court rightfully found that the defendant's allegations lacked merit, we adhere to a case-by-case, fact-specific examination, driven by the record. Indeed, the four descriptions in *Johnson* described why that *particular* claim lacked merit and therefore did not warrant appointing new counsel. Further, to find allegations "legally immaterial" implies that a trial court can certainly reach not only the factual basis but also the overall merits of an ineffective assistance claim to decline appointing new counsel for further hearing.

¶ 65                    Trial Court Hearing on Ineffective Assistance of Counsel

¶ 66        In the case at bar, our review of the record reveals that the trial court conducted an adequate inquiry into defendant's *pro se* posttrial allegations of ineffective assistance of counsel. Defendant does not appear to have presented the court with any valid arguments on the claims. We have examined the transcript of the posttrial proceedings, and the trial court addressed each allegation with defendant before finding the claims conclusory.

¶ 67        The transcript reveals that the trial court inaccurately stated "I will rule as to whether or not I find that there was ineffective assistance in this situation." While *Krankel* in fact requires a preliminary determination of possible neglect in deciding whether to appoint new counsel, the outcome was effectively the same. Defendant's claims were meritless, and the court appropriately declined to appoint new counsel. Further, the court did accurately represent the proceedings in stating, "[i]f I find that the allegations are founded, I'll have to appoint separate counsel, and we will proceed to a full-blown *Krankel* hearing." It is apparent that the court was referring to a hearing on the claims with defendant represented by newly appointed counsel when referring to a "full-blown *Krankel* hearing." Although the court's description may have contained a few misnomers, this was an appropriately conducted inquiry. Defendant's allegations were either matters of trial strategy or unfounded claims.

¶ 68        The record reveals that this trial centered largely on credibility. The court found defendant's assertion that a thrown seat cushion resulted in a laceration requiring staples implausible. On cross-examination, the victim admitted she believed the incident was an accident. Further impeachment via text messages was thus deemed unnecessary by counsel. Through our scrutiny of the record, we find that defendant received effective assistance of counsel and was not prejudiced by his attorneys' performance. The court rightfully operated within its discretion to decline to appoint new counsel to address defendant's *pro se* posttrial claims of ineffective assistance of counsel.

¶ 69                                        CONCLUSION

¶ 70        For the reasons discussed above, we hold that a trial court may consider both the facts and legal merits of a defendant's *pro se* posttrial allegations of ineffective assistance of counsel at the preliminary inquiry stage. Accordingly, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 71        Appellate court judgment reversed.

¶ 72        Circuit court judgment affirmed.