NOTICE

Decision filed 02/18/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180451-U

NO. 5-18-0451

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Franklin County. |
| | ) | |
| v. | ) | No. 12-CF-335 |
| | ) | |
| CHRISTOPHER L. ROLLINS, | ) | Honorable |
| | ) | Thomas J. Tedeschi, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The order of the circuit court of Franklin County denying the defendant, Christopher L. Rollins's, *pro se* posttrial motion alleging ineffective assistance of trial counsel is hereby affirmed where the court's findings following an inquiry in accordance with *People v. Krankel*, 102 Ill. 2d 181 (1984), were not manifestly erroneous.

¶ 2    On August 21, 2012, the defendant, Christopher L. Rollins, was charged by information with one count of aggravated battery for knowingly causing great bodily harm to the victim, Tessa Leech (née Akin), in violation of section 12-3.05(a)(2) of the Criminal Code of 2012 (720 ILCS 5/12-3.05(a)(2) (West 2012). Following a bench trial, the trial court found the defendant guilty. The defendant filed a *pro se* motion for new

1

trial, which included claims of ineffective assistance of trial counsel. At the defendant's sentencing hearing, the court found his motion to be premature and moot. The defendant was sentenced to 30 years' imprisonment, followed by 3 years of mandatory supervised release (MSR), and ordered to pay $92,757.37 in restitution. The defendant appealed, and this court found that the trial court failed to conduct a preliminary hearing on the defendant's claims of ineffective assistance of counsel as required by *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny. On remand, the trial court conducted a preliminary *Krankel* hearing before denying the defendant's claims of ineffective assistance. The defendant appeals. For the reasons that follow, we affirm the court's ruling.

¶ 3                                  I. BACKGROUND

¶ 4    The defendant was charged with one count of aggravated battery where he, by means of a flammable substance, knowingly caused great bodily harm to the victim in that he knowingly threw a flammable liquid on her, which then ignited. On September 4, 2014, a bench trial was held on the matter. Relevant to the issues on appeal, the following evidence was presented at trial.

¶ 5    The victim testified that on August 20, 2012, she drove from St. Louis, Missouri, to the house in West Frankfort, Illinois, that she shared with the defendant, her then boyfriend. She arrived around noon, and he arrived shortly thereafter. The two argued on and off throughout the day. Seth Riddle and Thomas Jophlin were also present. At some point the victim went into the living room, and the defendant told her to "sit the f*** down and shut the f*** up," so she sat in the recliner he pointed to. Riddle and

2

Jophlin were also in the room sitting on the couch. After sitting down, she continued arguing with the defendant, saying, "Life didn't have to be such hell. And you shouldn't make other people's lives hell." In response, the defendant said, "I'll show you hell. I'll put you there." He then walked around a corner and returned with "[a] jug of industrial strength brake cleaner with the lid already off of it." He doused her with the liquid twice and then, while her hands were up, struck a lighter "just a couple of inches" from her right hand. She immediately ignited and her entire body was on fire. She dropped to the floor and began rolling around while Riddle and Jophlin ran out the front door. Though she was trying to put herself out, "all of the chemicals were just transferring onto the carpet so everything else was catching fire." The defendant left her in the apartment, and she ran out "not too far behind him." While still on fire, she ran into the backyard, where she rolled on the ground until she put herself out. Medical assistance arrived, and she was taken by ambulance to Herrin Hospital. She then had to be intubated and flown to St. John's Mercy Hospital in St. Louis, Missouri, for treatment. She suffered severe burns and injuries, including second, third, and fourth degree burns and the loss of her fingers. Her treatment included 18 surgeries and 60% of her skin being covered in grafts.

¶ 6     Seth Riddle testified that on the day of the offense, he went to the defendant's residence to visit with him. When he arrived, the defendant, the victim, and Jophlin were already there. He was there for approximately 15 minutes in the front room of the house. The defendant and the victim were also in the front room arguing. At some point, the defendant left the room and returned with a jug that contained a clear liquid. The defendant "threw some on her, like a dump on her, a couple of dumps on her. Come [*sic*]

3

in and like shook it on her a couple of times." The victim was sitting in a chair when the defendant did this. After dumping the liquid on the victim, the defendant returned to the kitchen. Riddle then saw that the victim had a lighter, which she lit, and went into flames. She then yelled the defendant's name, and he returned from the kitchen.

¶ 7 Thomas Jophlin testified that at the time of the incident, he was sitting on the couch next to Riddle, whom he had just met 15 minutes prior. The defendant and the victim were arguing while the victim sat in a chair in the same room, and the defendant paced in and out. At one point, the defendant returned holding a clear jug. While standing over the victim, the defendant splashed her with liquid, moving the jug horizontally. The defendant then left the room, walking toward the kitchen. The victim struck a lighter and immediately caught on fire.

¶ 8 Officer Ron Howard testified that he conducted a video- and audio-recorded interview with the defendant, which was entered into evidence and published to the trial court. During the interview, the defendant admits that he and the victim were arguing and that he said, "I'll burn you and this place down," but claimed he was not serious. He also admitted to splashing her with a liquid that he knew to be flammable. However, he claimed he did not know who ignited the victim.

¶ 9 On September 16, 2014, the trial court called a hearing to announce its findings. First, the court noted that it was undisputed that the victim suffered great bodily harm from a flammable substance being placed on her and igniting, that the flammable substance was placed on her by the defendant, and that the defendant and the victim had been arguing prior to the defendant placing the flammable substance on her. The one

4

factual dispute for the court, about which there was conflicting evidence, was the identity of the person that ignited the liquid. The court explained that merely placing the flammable substance on the victim, without also igniting it, was not enough to support a conviction for aggravated battery. However, the court found the victim's testimony to be the most credible evidence on the issue—*i.e.*, that the defendant not only doused her with the flammable liquid but also lit a lighter near her hand which caused her body to ignite. After considering all of the evidence presented at trial, the court found the defendant guilty of aggravated battery.

¶ 10　On October 16, 2014, the defendant filed a *pro se* motion for new trial. The defendant argued that there was new evidence available that was not presented at trial and that his trial counsel was ineffective in representing him where counsel failed to cross-examine the State's key witness, failed to admit prior inconsistent statements of the victim into evidence, and failed to challenge the victim's credibility.

¶ 11　At the sentencing hearing on November 18, 2014, the trial court addressed the defendant's motion and found it to be premature and moot. It then sentenced the defendant to 30 years' imprisonment, followed by 3 years of MSR, and ordered him to pay $92,757.37 in restitution. The defendant appealed.

¶ 12　On appeal, this court entered a summary order remanding the case to the trial court with directions to conduct a hearing in compliance with *Krankel*. See *People v. Rollins*, No. 5-14-0578 (Aug. 15, 2017) (unpublished summary order under Illinois Supreme Court Rule 23(c)). On remand, the trial court entered a docket entry appointing Kevin C. Popit as counsel for the defendant. Popit was appointed in place of the defendant's

5

previous trial counsel, Michael A. Rowland, as he had since retired from the public defender's office.

¶ 13   On August 17, 2018, the trial court conducted a *Krankel* inquiry on the defendant's claims of ineffective assistance of counsel.  At the outset, the court explained that defense counsel would not be participating in the hearing, that the State would not perform any adversarial role, and that the proceeding itself was not adversarial.  The court noted the defendant's arguments that he was denied ineffective assistance of counsel where counsel failed to cross-examine the victim as the State's key witness, where he failed to admit a prior inconsistent statement of the victim, and where he failed to  challenge the victim's credibility on cross-examination.

¶ 14   The trial court questioned Rowland, the defendant's trial counsel, about the defendant's allegations.  Rowland told the court that though his recollection of the trial was minimal, with regards to the handling of the victim as a witness, he recalled that she had very severe burns and it was his practice that "it was not a good idea to beat up a victim on a witness stand," particularly if they were showing scars.  He did not want to cause her unnecessary pain and did not think she had anything to say that would have helped the defendant's case.

¶ 15   The defendant then addressed the court, reiterating his claims that counsel was ineffective for failing to introduce a prior inconsistent statement by the victim wherein she said that the defendant was not the only person who poured the flammable liquid on her and for failing to investigate potential witnesses to an incident where the victim cut her wrists approximately one month prior to the offense.  Ultimately, the court ruled that

the allegations pertained to counsel's trial strategy and did not establish a claim of ineffective assistance of counsel. The defendant appeals.

¶ 16                                II. ANALYSIS

¶ 17    The defendant initially raised two issues on appeal. First, whether the trial court erred where it conducted a preliminary hearing on the merits of the defendant's claims after new counsel had already been appointed. Second, whether the court's denial of his claims of ineffective assistance of counsel on the merits was manifestly erroneous.

¶ 18    As to the first issue, the defendant recognizes that the supreme court's decision in *People v. Roddis*, 2020 IL 124352, is controlling and that his allegation that the trial court committed procedural error in conducting a preliminary hearing after the appointment of new counsel does not, without more, establish a basis for reversal.

¶ 19    A *pro se* posttrial motion alleging ineffective assistance of counsel is governed by the common law developed through *Krankel* and its progeny. *People v. Ayres*, 2017 IL 120071, ¶ 1. Where a defendant brings a *pro se* claim to the attention of the trial court, "the court should first examine the factual basis of defendant's claim." *Roddis*, 2020 IL 124352, ¶ 35. "If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *Id.*

¶ 20    Here, the trial court did not err when it conducted a *Krankel* inquiry into the factual basis of the defendant's claims of ineffective assistance of counsel. Despite new

7

counsel having already been appointed,[1] the court was still obligated to make a substantive determination as to whether the defendant's claims warranted further proceedings.

¶ 21   Therefore, we need only address the second issue raised by the defendant regarding the merits of his claims.  Specifically, whether the trial court erred in denying his posttrial motion where he alleged that he was denied effective assistance of trial counsel.  The defendant argues that counsel was ineffective in failing to introduce a prior inconsistent statement made by the victim that he was not the only person who poured the flammable liquid on her and in failing to investigate potential witnesses to an incident one month prior to the offense where the victim cut her wrists.

¶ 22   Where a defendant presents a posttrial claim of ineffective assistance of trial counsel, the common law procedure developed through *Krankel* and its progeny is triggered.  *Ayres*, 2017 IL 120071, ¶ 11.  Initially, the trial court is required to conduct an inquiry into the underlying factual basis of defendant's claims.  *Id.*  From this, the court determines whether the claim either lacks merits or pertains only to trial strategy or shows possible neglect of the case by trial counsel.  *Id.*

¶ 23   In making the inquiry, the trial court employs any one of three methods of interchange with the defense to assess what further action, if any, is warranted on defendant's claim.  *Id.* ¶ 12.  Accordingly, the court is permitted to question trial counsel about defendant's claims, have a discussion with defendant directly, and/or rely on its

---

[1]The defendant, in his reply brief, states that he does not waive his argument that the trial court committed procedural error and maintains that this contributed to the court's error in denying his claims on the merits.

own knowledge of defense counsel's performance at trial and the insufficiency of defendant's allegations in light of what occurred at trial. *Id.* The court's inquiry must be adequate so that it gives full consideration to defendant's claim, thereby potentially limiting issues on appeal. *Id.* ¶ 13.

¶ 24 Following a *Krankel* inquiry, a trial court's determination on the merits of a defendant's claim of ineffective assistance of trial counsel will be reversed only if the court's action was manifestly erroneous. *People v. McLaurin*, 2012 IL App (1st) 102943, ¶ 41. " 'Manifest error' is error which is plain, evident, and indisputable." *Id.*

¶ 25 We consider first the argument that counsel was ineffective for failing to introduce the victim's prior inconsistent statement. According to the defendant, prior to trial, the victim gave a statement that the defendant was not the only person who poured the flammable liquid on her. At the *Krankel* inquiry, Rowland testified that his decisions regarding the handling of the victim as a witness were based on the fact that she was severely burned and that her scars were visible. He did not want to "beat her up" on the stand, especially when he did not believe her testimony would be helpful to the defendant's case. The court found that this issue pertained to trial strategy and did not establish possible neglect of the case by counsel.

¶ 26 Next, we consider the defendant's assertion that counsel was ineffective where he failed to investigate potential witnesses to the victim cutting her wrists one month before the incident. The defendant argues that this testimony would have corroborated his defense that the victim lit herself on fire because she was violent and self-destructive. However, as previously noted, there was credible testimony from the victim that the

9

defendant lit the lighter that set her on fire. Additionally, the contradictory testimony of Riddle and Jophlin gave no credibility to the claim that the victim lit herself on fire. The trial court found that counsel's decision not to investigate the issue further was also related to trial strategy.

¶ 27 Based on our review of the record, the trial court's determination that counsel's refusal to introduce the prior inconsistent statement of the victim or investigate potential witnesses pertained to trial strategy was not manifestly erroneous. The court relied on its discussion with trial counsel, the defendant, and its own recollection in reaching this decision. We therefore find that the court did not err in denying the defendant's *pro se* posttrial motion alleging ineffective assistance of trial counsel.

¶ 28                                    III. CONCLUSION

¶ 29 For the foregoing reasons, we affirm the order of the circuit court of Franklin County.


¶ 30 Affirmed.