2022 IL App (1st) 210554-U

No. 1-21-0554

Order filed June 30, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | |
| v. | ) | Nos. YH-036-123 |
| | ) | YH-036-124 |
| | ) | |
| SHERRY ELKHALDY, | ) | Honorable |
| | ) | Ketki Shroff Steffen, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*: We remand for a new preliminary inquiry into defendant's *pro se* posttrial allegations of ineffective assistance where the judge who heard the allegations did not preside over the pretrial proceedings they implicated.

¶ 2    Following a bench trial, defendant Sherry Elkhaldy was found guilty of driving under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2018)) and improper traffic lane usage (625 ILCS 5/11-709(a) (West 2018)). The court imposed one year of conditional discharge and

supervision, respectively. On appeal, defendant contends that the trial court conducted an inadequate preliminary inquiry into her *pro se* posttrial claim of ineffective assistance of counsel under *People v. Krankel*, 102 Ill. 2d 181 (1984). For the following reasons, we remand.

¶ 3    Defendant was charged with driving under the influence of alcohol and improper traffic lane usage following an incident on June 9, 2019.

¶ 4    During pretrial proceedings before the Honorable Beatriz Santiago on July 8, 2020, private counsel withdrew at defendant's request. Judge Santiago appointed an assistant public defender (APD), Melissa Wright, to represent defendant. Private counsel asked how he should transfer discovery materials to Wright. Judge Santiago stated that Wright "can provide her information and figure out that way how to exchange discovery." Judge Santiago then directed defendant to speak with Wright. The report of proceedings reflects that inaudible dialogue transpired; in response, Judge Santiago stated, "I would prefer that you show it to *** Wright."

¶ 5    On August 11, 2020, before the Honorable Ketki Shroff Steffen, defendant appeared without Wright. Defendant stated that the proceedings had exacerbated her financial and employment problems and that Wright "never called [her] back." Defendant stated that she had "some paperwork" and claimed that she had been "forced to sign papers at the police station." Judge Steffen advised that defendant "cannot show [the court] anything," and the court "cannot go into those issues without [defendant's] attorney here." Judge Steffen ordered the State to tender discovery by August 14, 2020. Another APD, who was in the courtroom, stated that he would email Wright regarding the day's proceedings.

¶ 6    On August 21, 2020, before Judge Santiago, Wright stated that she had received "the police reports" and "two videos," including the "booking video," but that defendant was "not happy"

because she wanted the case resolved. The State confirmed that discovery was complete. Judge Santiago continued the case for Wright to review discovery with defendant.

¶ 7    On November 18, 2020, before the Honorable Steven M. Wagner, Wright informed the court that defendant provided "some new information today that I need to look into." Wright requested a continuance, but defendant asked the court to dismiss the case. The following colloquy occurred:

> "[DEFENDANT]: Your Honor, I have paperwork.
>
> THE COURT: Ma'am, your lawyer said you gave her some information, which she needs to check into but wasn't able to do it yet since you just provided her with that information. So that's why she's asking for the continuance to January to check out the information and reset the matter for trial. Whether that results in the case being dismissed or not, I don't know.
>
> * * *
>
> [DEFENDANT]: Your Honor, I have not been able to work due to this. I cannot finish any classes. I finished the CNA class, your Honor. I cannot do any other classes due to the fact this is still continuing."

¶ 8    Wright reiterated that defendant had tendered "new information" that Wright would "like to look into," but that Wright was ready for trial if defendant wished. Judge Wagner confirmed that the State was ready for trial and passed the case. Afterwards, Judge Wagner advised the parties that the case had been "transferred" to another courtroom.

¶ 9    The half-sheet entries for the proceedings before Judge Wagner on November 18, 2020, does not mention the discussion that occurred between defendant, Wright, and the court.

¶ 10    That same day, proceedings continued before Judge Steffen. Judge Steffen admonished defendant regarding her right to a jury trial, explained the difference between a jury trial and bench trial, and accepted her written jury waiver.

¶ 11    Elk Grove Village police officer Brandon Rubino testified that on June 9, 2019, around 11:40 p.m., he arrived at the scene of a single-car accident at the "T-intersection" of Devon Avenue and Elmhurst Road in Elk Grove Village. Rubino observed a "still running" vehicle in a ditch past the intersection, and surmised that the vehicle drove straight through the intersection without turning left or right.

¶ 12    Defendant, whom Rubino identified in court as the driver of the vehicle, was sitting on a bench. Rubino spoke with defendant, smelled a "strong odor" of alcohol on her breath, and observed that her eyes were bloodshot and glassy. Defendant stated that she consumed one glass of alcohol at a wedding.

¶ 13    At Rubino's request, defendant completed the horizontal gaze nystagmus, walk-and-turn, and one-leg-stand tests. Defendant showed sufficient indicia of impairment on all three tests, so Rubino arrested her for driving under the influence of alcohol. Rubino transported her to the police station, where she was read the "Warning to Motorist." After a 20-minute observation period, Rubino offered defendant a breathalyzer test, which she refused.

¶ 14    On cross-examination, Rubino stated that it rained that night and the roads were wet. Defendant informed Rubino that she drove straight because "she was following her GPS." Rubino never asked defendant whether she had a concussion because she refused medical attention at the scene.

¶ 15    The State published footage from the dashboard camera of a police vehicle, which is included in the record on appeal. The footage, which includes audio, depicts Rubino speaking with defendant, and defendant performing the field sobriety tests.

¶ 16    The State rested, and Wright informed the court that defendant wished to testify against counsel's advice.

¶ 17    Defendant testified that on June 9, 2019, she attended a wedding where she fought with her daughter. Defendant had one or two glasses of alcohol, and then drove home using GPS. On the drive, defendant's heel "got stuck" and her vehicle drove straight into a ditch. The event was a "blur" because defendant sustained a concussion and experienced short-term memory loss. She had a "piece of wood" removed from her finger at the emergency room. She sustained concussions on two previous occasions, but did not know whether she mentioned a concussion to hospital personnel.

¶ 18    Judge Steffen continued the case in order to review the video evidence.

¶ 19    On December 3, 2020, Judge Steffen found defendant guilty of driving under the influence of alcohol and improper lane usage. Judge Steffen believed that defendant had suffered a "prior concussion," observed that she was an "emotional person" who might have "slight *** cognitive difficulties," and added that her fight with her daughter could have impacted her judgment on the day of the incident. Judge Steffen noted, however, that "GPS is not the driver," defendant showed consciousness of guilt by refusing the breathalyzer test, defendant drank enough to impair her judgment, and "alcohol was directly responsible for the impairment in which she drove."

¶ 20    Immediately after the ruling, as Judge Steffen related defendant's appellate rights, defendant interjected that she "did not know that my Public Defender did not have all the

information from my lawyer. I would have never given my rights up and I didn't find this out until afterwards." Wright responded that prior to trial, Wright sought a continuance and "spoke with [defendant] about the fact that I did not have the evidence and she insisted that we go into trial on that date."

¶ 21 The following colloquy occurred:

"THE COURT: Okay. All I can say, I'm assuming you are speaking of the medical records.

[DEFENDANT]: No. There is a lot of things that was not [*sic*] *** I did not know you didn't even know about any information. *** I would've never [have] given my rights up, Your Honor.

THE COURT: One second. Just let's have a conversation, okay. Are you talking about your information regarding your prior concussion?

[DEFENDANT]: I have a—I have statements that I gave to the public attorney.

THE COURT: I understand. I'm just asking are you talking about not having a— you are saying something to me as a judge. You don't have to answer my question, but I'm asking are you talking about your information regarding your previous concussion?

[DEFENDANT]: No. There is more information from when I had my—when I paid my first attorney. I did not know that the public defenders didn't have all the information. I was not aware of this.

THE COURT: Listen—

[DEFENDANT]: I would never have given my rights up.

THE COURT: I understand."

¶ 22     Judge Steffen resumed delivering defendant's appellate rights without further discussion regarding defendant's comments.

¶ 23     Wright filed a motion and amended motion for new trial. Defendant also filed a *pro se* motion for new trial stating that she wanted her "rights back for [a] jury trial or mistrial" and was "given fees waived."

¶ 24     On March 8, 2021, defendant, Wright, and a supervisor from the public defender's office appeared before Judge Steffen. Wright requested a continuance to review "additional information" provided by defendant. The supervisor explained that "there may be some germane information" in "additional records" and "police reports" that "were incomplete that were sent to our office." Judge Steffen observed that defendant "wants to speak to me directly" and "has a right to present what she wants to the Court," but that she should speak to her attorney "before she says anything further to me." The case was continued.

¶ 25     During proceedings before Judge Steffen on May 11, 2021, the prosecutor stated that he "was informed" the defense would not be filing an additional motion for new trial predicated on "new documents that the defendant was to provide." Following arguments, Judge Steffen denied counsel's motion for new trial.[1]

¶ 26     During the sentencing hearing, defendant spoke in allocution and the following colloquy occurred:

> "[DEFENDANT]: I don't understand because I have evidence that shows that my
>
> heel got stuck in my shoe. That's why I went *** down the ditch. And it shows that I had

---

[1] Judge Steffen did not expressly rule upon defendant's *pro se* motion for new trial, but noted that her jury waiver claim was meritless.

a concussion, and I have all the documents to show proof, and I was not given—it's 3.1. I don't have the papers. It's regarding the Disability Act, that you're supposed to be able to show discovery, and I was not able to—I was not given that.

THE COURT: Ma'am, I'm asking you to present something in terms of mitigation for your sentencing. The issue of your guilty finding, et cetera, has been litigated at length by your attorney. This is not a motion for a new trial. That is over."

¶ 27    Judge Steffen imposed one year of conditional discharge for driving under the influence of alcohol and supervision for improper lane usage.[2] Defendant did not file a motion to reconsider sentence.

¶ 28    On appeal, defendant argues that the trial court failed to conduct an adequate preliminary *Krankel* inquiry. According to defendant, the court could not have determined whether the APD potentially neglected the case where defendant asserted that the APD failed to obtain evidence from defendant's prior attorney, but the court did not determine what that evidence was.

¶ 29    Proceedings on a *pro se* posttrial motion alleging ineffective assistance of counsel are governed by the procedure developed in *Krankel*, which encourages the trial court to fully address the claims alleged and narrow the issues to be addressed on appeal. *People v. Roddis*, 2020 IL 124352, ¶ 34. A trial court will not automatically appoint new counsel, but must first examine the factual and legal merits of the defendant's claim. *Id*. ¶¶ 35, 61. If the court determines the claim lacks merit or pertains only to trial strategy, it need not appoint counsel and may deny the motion. *Id*. ¶ 35. A claim lacks merit if it is conclusory, misleading, legally immaterial, or does not raise a

---

[2] In imposing sentence, Judge Steffen explained that fines and costs would not be assessed on the count for improper lane usage because that count "merged along with the DUI."

colorable claim of ineffective assistance of counsel. *People v. Robinson*, 2015 IL App (1st) 130837, ¶ 71. If the allegations show possible neglect, new counsel should be appointed. *Roddis*, 2020 IL 124352, ¶ 35.

¶ 30   The purpose of a preliminary *Krankel* inquiry "is to ascertain the underlying factual basis for the ineffective assistance claim and to afford a defendant an opportunity to explain and support his claim." *People v. Ayres*, 2017 IL 120071, ¶ 24. The trial court may discuss the defendant's allegations with counsel and the defendant, and rely "on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations." *Id.* ¶ 12. "A brief discussion between the trial court and the defendant" may be adequate to determine whether further action is required regarding the defendant's claims. *People v. Moore*, 207 Ill. 2d 68, 78 (2003). Whether a trial court properly conducted a preliminary *Krankel* inquiry presents a legal question which we review *de novo*. *People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 31   Turning to the present case, on July 8, 2020, before Judge Santiago, defendant's private counsel withdrew and advised the court that he needed to transfer discovery to the appointed APD, Wright. On August 11, 2020, before Judge Steffen, defendant asserted that she had difficulty communicating with Wright, and had "some paperwork" to show the court. On August 21, 2020, Wright advised Judge Santiago that discovery was complete. Then, on November 18, 2020, Wright asked Judge Wagner for a continuance to examine "some new information" that defendant provided. Defendant told Judge Wagner about hardships that the proceedings had caused and that she had "paperwork." Counsel reiterated that she wanted to "look into" the "new information," but was ready for trial if defendant wished. The case was transferred to Judge Steffen and proceeded

to trial that same day, but the half-sheet does not mention the discussion that occurred before Judge Wagner.

¶ 32   Immediately after Judge Steffen found defendant guilty, defendant stated that she "did not know" that Wright "did not have all the information" from her private attorney, and that she "would have never given my rights up and I didn't find this out until afterwards." Wright responded that she had sought a continuance and "spoke with [defendant] about the fact that I did not have the evidence," but defendant "insisted that we go into trial on that date." Judge Steffen repeatedly asked defendant whether the information that Wright lacked pertained to defendant's medical records. Defendant said no, but that "there [were] a lot of things," including statements that she gave "to the public attorney" and information that she gave her private attorney. She did not elaborate on the nature of the information, and Judge Steffen did not inquire further.

¶ 33   Defendant's posttrial statements to Judge Steffen, liberally construed, could be considered a claim that her trial counsel, the APD, was ineffective for proceeding to trial without investigating information relevant to her case. See *People v. Clifton*, 2019 IL App (1st) 151967, ¶ 90 (the defendant's "specific allegations" that counsel failed to investigate witnesses and did not discuss the case with him sufficed to trigger a preliminary *Krankel* inquiry). Further, viewing the record as a whole, we cannot say the court conducted an adequate preliminary investigation into defendant's allegations.

¶ 34   As noted, after defendant raised her posttrial complaint of ineffective assistance, Judge Steffen asked whether defendant was alleging that her private counsel had not given medical records to Wright. Defendant answered negatively, without clarifying the evidence to which she was actually referring. Wright, in turn, asserted that defendant insisted on proceeding to trial before

Wright could review evidence that defendant provided that day, but did not explain what evidence defendant had provided. Judge Steffen did not query defendant or Wright to clarify the issue. Thus, notwithstanding that Judge Steffen heard from both defendant and Wright, the colloquy did not establish what evidence defendant and Wright were discussing or whether they were discussing the same evidence.

¶ 35    Moreover, multiple judges presided during defendant's pretrial proceedings. Significantly, Judge Wagner, and not Judge Steffen, presided on the morning of trial when counsel advised the court that defendant had provided new information and defendant nonetheless elected to proceed to trial. The half-sheet entries for the morning's proceedings do not reference that colloquy. Consequently, although a trial judge may rely on personal knowledge of the proceedings in conducting a preliminary *Krankel* inquiry, in this case, the record does not establish that Judge Steffen knew of the earlier proceedings. Given these circumstances, the record does not show that the posttrial colloquy between defendant, counsel, and Judge Steffen, coupled with the personal knowledge of counsel's performance then available to Judge Steffen, was adequate to determine whether further action was required regarding defendant's claims. See *Moore*, 207 Ill. 2d at 78.

¶ 36    For the foregoing reasons, we remand the matter to the trial court for the limited purpose of conducting a preliminary *Krankel* hearing on defendant's ineffective assistance of counsel claim, and otherwise affirm.

¶ 37    Affirmed in part; remanded with directions.