2025 IL App (2d) 240751-U
No. 2-24-0751
Order filed December 15, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CF-944 |
| CESAR PONCE, | ) ) ) | Honorable David P. Kilment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court conducted an adequate preliminary *Krankel* inquiry into defendant's pro se claim of ineffective assistance of counsel and properly denied the claim because it lacked factual or legal merit.

¶ 2    Defendant, Cesar Ponce, argues that the trial court's preliminary *Krankel* inquiry failed to ascertain the underlying factual basis of his claim of ineffective assistance of counsel, and therefore was inadequate. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4     The State charged defendant Cesar Ponce ("Ponce") with two counts of first-degree murder following the shooting death of Samuel Ortiz-Rodriguez in Aurora on May 24, 2021. Also involved in the shooting were Fidel Bello, charged with first-degree murder in a separate indictment, and Jose Gonzalez, whom the State did not charge in connection with the murder. The State proceeded against Ponce on a theory of accountability for the murder. 720 ILCS 5/5-2.

¶ 5     Trial evidence showed that on May 24, 2021, Ponce and co-defendant Fidel Bello, both active members of the Latin Kings street gang, traveled on foot from Ponce's house at 532 East Downer Place to the area of 400 South Spencer Street, which is a known area of the "Insane Deuces," a rival gang to the Latin Kings. There, Ponce and Bello encountered the victim, Samuel Ortiz-Rodriguez. Following a brief verbal exchange, Bello pulled a loaded revolver from his waistband and fired three times at the victim. Two of the bullets struck Ortiz-Rodriguez in the head, killing him instantly. The Bureau of Alcohol, Tobacco, and Firearms caught the entire incident on video while monitoring the area for Insane Deuce gang activity. Police recovered the murder weapon from the scene, a .22 caliber revolver. At trial, the State produced forensic evidence linking the murder weapon to a cartridge recovered from Ponce's bedroom.

¶ 6      On March 2, 2023, a jury found Ponce guilty of first-degree murder. The parties proceeded to sentencing. In the Pre-Sentence Investigation report (PSI), Ponce "indicated that he feels his lawyer was ineffective and failed to keep him abreast of what was happening in his case." (CI 12). While Ponce's *pro se*, posttrial claim of ineffective assistance of counsel should have initiated an inquiry under *People v. Krankel*, 102 Ill. 2d 181 (1984), the parties erroneously proceeded to sentencing. The trial court sentenced Ponce to a total of 40 years in prison: 25 years for first-degree murder, plus a mandatory 15-year firearm enhancement. On direct appeal, Ponce

argued that the trial court erred by failing to conduct a preliminary inquiry, pursuant to *People v. Krankel*, 102 Ill.2d 181 (1984). The state confessed error, and we remanded for the limited purpose of conducting a preliminary *Krankel* inquiry, and for any appropriate proceedings resulting from that inquiry.

¶ 7    The trial court held the inquiry on December 5, 2024. Present were Ponce, his trial counsel Liam Dixon, and the State. The trial court asked Ponce about his comments during the PSI. Ponce recounted, "[b]efore my old trial, I gave my lawyer an affidavit[] and he did not use that affidavit. And he know I gave him a[n] affidavit[]. I had two copies of affidavits. He did not use that and I had told him— ". The trial court interjected, asking Ponce what the affidavit said. Ponce replied:

> I don't know what it said. My co-defendant had wrote it for me. And then I had told him to subpoena my co-defendant so he could come testify on my trial, my new trial, so I could get whatever…whatever was said on the affidavit. I don't know what was said on the affidavit, but I gave it to my lawyer.

¶ 8    The trial court asked Mr. Dixon for his response, which was as follows:

> [T]here was one co-defendant in this case. He was represented by Miss Hawkins. I discussed with her multiple times. She told me not to converse with her client at all. I did not do that.
>
> There was another individual who was in this case who was not charged in this case. As you may recall, we did subpoena him. And his attorney, Ms. Tilmon, came into court on that day and said he was not going to be testifying[1]. And the State did not grant him immunity.  Based on that your Honor, we were not able to call either one of those witnesses.

¶ 9    The trial found that Ponce's attorney "was not ineffective," concluding that trial counsel had no viable means of introducing the affidavit, regardless of its author. Ponce filed a timely notice of appeal on December 11, 2024.

---

[1] This individual, Jose Gonzalez, appeared in court on February 23, 2023, and announced his intention to invoke the Fifth Amendment if called to testify in Ponce's case. (R 266).

¶ 10                                    II. ANALYSIS

¶ 11    Whether the trial court conducted an appropriate *Krankel* inquiry presents a legal question that we review *de novo*. *People v. Jolly*, 2014 IL 117142, ¶ 28. Under *Krankel* and its progeny, a defendant who brings a *pro se*, posttrial claim of ineffective assistance of counsel initiates a multi-level inquiry. The first level of inquiry, at issue here, requires the court to examine the factual basis of the defendant's claim. If the trial court concludes that the claim "lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *People v. Roddis*, 2020 IL 124352, ¶ 35. If, however, defendant's allegations show possible neglect of the case, then the trial court should appoint new counsel to represent defendant in the next levels of the inquiry. *Id*. at ¶ 35-36. While the trial court must, at a minimum, consider the *factual* basis of a defendant's claim, it may also deny a *pro se* motion due to its lack of *legal* merit. *Id*. at ¶ 70. Moreover, the trial court may "base its evaluation … on its knowledge of the defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *People v. Moore*, 207 Ill. 2d 68, 79 (2003).

¶ 12    Here, Ponce's claim of ineffective assistance arises from his trial counsel's failure to introduce an affidavit allegedly prepared by Ponce's "co-defendant." This supposed affidavit is obscure. When asked what it contained, Ponce had no answer. When asked who wrote it, neither Ponce nor his trial counsel seemed to know. For his part, Ponce claimed that his "co-defendant" wrote the affidavit. If this is true, then its author was Fidel Bello. However, Ponce's trial counsel suggests the author may have instead been Jose Gonzalez, the uncharged participant in Ortiz-Rodriguez's murder.

¶ 13    Whether Bello or Gonzalez wrote the affidavit changes our analysis, but not our conclusion. If Gonzalez wrote the affidavit, then his fifth amendment invocation erected insurmountable

constitutional and evidentiary barriers to its admission, assuming that it was even relevant. U.S. Const. amend. V., Ill. R. Evid. 802 (eff. Jan. 1, 2011). If Gonzalez wrote the affidavit, introducing it at trial would have thus been a factual impossibility.

¶ 14    If instead *Bello* wrote the affidavit, then securing the testimony necessary for its introduction would have placed trial counsel in probable violation of Illinois Rule of Professional Conduct 4.2, which prohibits contact with a represented party against the wishes of that party's attorney. Ill. R. Pro. Conduct (2010) R. 4.2 (eff. Jan. 1, 2010). Ponce may argue that his right to counsel includes a right to an attorney willing to risk professional censure, if doing so increases the chance of acquittal. This argument is unsupported by the substantive law of one's right to counsel. Generally, "[t]he decision of which witnesses to call at trial is a matter of trial strategy **** and it is generally immune from claims of ineffective assistance of counsel." *People v. Harmon*, 2013 IL App (2d) 120439 ¶ 26. While trial counsel had a duty to conduct both legal and factual investigations on behalf of his client, the law measures this duty against "a standard of reasonableness given all of the circumstances, applying a heavy measure of deference to counsel's judgments." *Id*., *People v. Kokoraleis*, 159 Ill.2d 325, 330 (1994) (quoting *Strickland v. Washington*, 466 U.S. 668, 691 (1994)). Here, trial counsel's decision to respect the boundaries of the no-contact rule meets the standard of *reasonableness* (not heroicism) against which the law weighs his actions. Accordingly, if it was Bello who wrote the affidavit, the trial court could appropriately dismiss the claim for lack of legal merit. See *Roddis*, 2020 IL 124352 at ¶ 70.

¶ 15    We do not mean to confuse the applicable standard by discussing whether counsel acted reasonably. The standard remains whether Ponce demonstrated "possible neglect" of his case. We mean only to demonstrate that, whoever the author, Ponce's claim lacks either factual possibility

or legal merit. The Supreme Court has made clear that either is a sufficient basis to deny a *Krankel* motion. *Roddis*, 2020 IL 124352 at ¶ 70.

¶ 16 III. CONCLUSION

¶ 17 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 18 Affirmed.