**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200433-U

Order filed December 1, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Fulton County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0433 Circuit No. 15-CF-80 |
| CHADWICK N. BARNER, | ) ) ) | The Honorable Raymond A. Cavanaugh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Justices Holdridge and Hettel concurred with the judgment.

_____

**ORDER**

¶ 1　　*Held*:　The circuit court did not conduct an adequate *Krankel* inquiry into two of the defendant's claims of ineffective assistance of counsel. The court also improperly allowed the State to participate in the hearing.

¶ 2　　The defendant, Chadwick N. Barner, was convicted of, *inter alia*, aggravated fleeing or attempting to elude a police officer, obstructing a peace officer (720 ILCS 5/31-1 (West 2014)), aggravated battery *(id.* § 12-3.05(d)(4)(i)) and attempted first degree murder *(id.* § 8-4(a)). He was sentenced to concurrent prison terms of 6 years, 14 years, and 40 years, respectively. On

direct appeal, this court reversed the first two convictions but affirmed the attempted first degree murder conviction. *People v. Barner*, 2018 IL App (3d) 160023-U (unpublished order under Supreme Court Rule 23). In addition, this court remanded for a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), on Barner's *pro se* claims of ineffective assistance of trial counsel regarding the attempted first degree murder conviction. *Id.*

¶ 3     On remand, the circuit court conducted a *Krankel* hearing and denied Barner's claims. On appeal, Barner argues that the circuit court erred when it denied his claims of ineffective assistance of counsel. We affirm in part, reverse in part, and remand with directions.

¶ 4                              I. BACKGROUND

¶ 5     Many of the background facts of this case have already been set forth in Barner's previous appeal, *People v. Barner*, 2018 IL App (3d) 160023-U (unpublished order under Supreme Court Rule 23). We repeat only those facts necessary for resolution of the current appeal.

¶ 6     After a jury trial held between October 20 and 23, 2015, Barner was convicted of aggravated fleeing or attempting to elude a police officer, obstructing a peace officer (720 ILCS 5/31-1 (West 2014)), aggravated battery (*id.* § 12-3.05(d)(4)(i)) and attempted first degree murder (*id.* § 8-4(a)). The evidence presented at trial included that Canton Park District police officer Terry Parks observed Barner driving a vehicle at approximately 85 miles per hour in a 50-mile-per-hour zone on Route 9. Parks pursued Barner with his lights and siren activated, but eventually terminated the pursuit when Barner entered a residential area.

¶ 7     The Fulton County Sheriff's Department received a call regarding Parks' pursuit of Barner. Deputy Daniel Daly and Lieutenant Doug Lafary responded to the call. Daly eventually located Barner standing outside of his vehicle on Taylor Road. Barner told Daly that his vehicle

"had just quit running." Lafary performed a pat-down of Barner. Daly asked Barner about a bulge in his pocket, which Barner stated was a wad of cash. After Daly asked Barner to empty his pockets, Barner fled the scene on foot.

¶ 8     Daly and Lafary pursued Barner, who ran into a wooded area and then jumped into a pond/lake and swam away. The officers established a perimeter and began searching for Barner. An hour later, Barner was spotted, and his location was relayed to the other officers. Lafary drove his vehicle to that location after picking up sheriff Jeff Standard.

¶ 9     Shortly thereafter, Standard spotted Barner running along brush near the pond/lake. Lafary yelled at Barner to stop, and Barner crouched in the brush. Lafary slammed on his brakes, exited his vehicle, and tackled Barner. Lafary and Barner ended up in the water. Standard heard Lafary yell "[t]his fucker is trying to drown me" and then saw Lafary's head go underwater. Standard went knee-high into the pond/lake and pulled Barner off Lafary.

¶ 10     Lafary stated that he ended up in the pond/lake on his right shoulder and that Barner's upper torso ended up on his upper torso. Lafary tried to push Barner away, but Barner pushed back, including by pushing Lafary's head into the water. He occasionally was able to get a breath, but Barner kept pushing his head back into the water. During one of the times his head was above the water, Lafary yelled, "[t]his fucker is trying to drown me."

¶ 11     Barner testified, *inter alia*, that he and Lafary were two feet from the water after the tackle, that he never entered the water, and that he did not struggle or resist. He also stated that the officers were laughing and joking afterward, and that Lafary said, "I think he tried to kill me" in a joking voice to the other officers.

¶ 12     At the sentencing hearing on December 3, 2015, Barner claimed that the first time he met with trial counsel, he told trial counsel that he wanted to move for a change of venue because

3

Lafary was the jail administrator in Fulton County and because Lafary's wife worked in the State's Attorney's office. He also described trial counsel's representation of him as worthless.

¶ 13 The circuit court found one factor in aggravation—that Barner's conduct caused or threatened serious harm—and then sentenced Barner to concurrent prison terms of 6 years for aggravated fleeing, 14 years for aggravated battery, and 40 years for attempted first degree murder.

¶ 14 On December 31, 2015, trial counsel filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. The motion raised several issues but was never ruled upon. Barner filed a *pro se* notice of appeal on January 11, 2016.

¶ 15 On direct appeal, Barner argued, *inter alia*, that the State failed to prove him guilty beyond a reasonable doubt of all three charges. He also argued that the circuit court failed to conduct a proper inquiry into his dissatisfaction with trial counsel's representation. *Barner*, 2018 IL App (3d) 160023-U, ¶ 32. This court held, *inter alia*, that the State proved Barner guilty beyond a reasonable doubt of attempted first degree murder but failed to do so regarding the other two charges. *Id.* ¶¶ 40, 50, 55. Further, this court held that the circuit court failed to conduct a proper *Krankel* inquiry into Barner's *pro se* posttrial claims of ineffective assistance of trial counsel. *Id.* ¶ 73. We remanded the case for "a preliminary inquiry into defendant's *pro se* posttrial claims of ineffective assistance of counsel with respect to the attempted murder conviction alone." *Id.* ¶ 81.

¶ 16 On remand, before a *Krankel* hearing was conducted, Barner filed a *pro se* postconviction petition on June 17, 2020, in which he raised 25 allegations of ineffective assistance of trial and appellate counsel.

4

¶ 17        On July 6, 2020, the circuit court held the *Krankel* hearing. The court asked Barner to list his issues. Barner read 20 of the claims from his postconviction petition, summarized as follows: (1) trial counsel failed to file a timely posttrial motion; (2) trial counsel failed to ensure there was a written record of the preliminary hearing and thereby prevented two witnesses from being impeached at trial with their statements from the preliminary hearing; (3) trial counsel "failed to investigate search warrant that was illegally obtained"; (4) trial counsel failed to ask questions of Lafary related to whether "circumstances that would result in a death by near drowning actually existed," such as whether Lafary actually swallowed any water or ran out of breath; (5) trial counsel failed to file a motion for new venue, as Lafary was "well known in local law enforcement and in the community"; (6) trial counsel failed to file a motion regarding the appearance of impropriety arising from the fact that Lafary's wife worked in the prosecutor's office; (7) trial counsel "failed to investigate the falsified information on the indictment of information," although Barner did not identify what false information the charging document allegedly contained; (8) trial counsel failed to present a photo at trial that allegedly showed Lafary's uniform only had a small wet spot on it; (9) trial counsel failed to object to the circuit court's consideration of "the threat of harm" as a factor in aggravation when that factor was inherent to attempted first degree murder; (10) trial counsel failed to object to Barner improperly receiving extended-term sentences on his aggravated battery and aggravated fleeing convictions; (11) trial counsel failed to file a posttrial motion raising points 9 and 10; (12) trial counsel "denied defendant his right to a speedy trial" when he sought a continuance from a pretrial conference, at which Barner was not present, after Barner had told trial counsel four weeks earlier that he did not want any continuances; (13) trial counsel failed to object to Parks' testimony, which was inconsistent with what Parks attested to in the charging document; (14)

5

trial counsel failed to properly question the State's rebuttal witnesses regarding why Barner's vehicle was not working; (15) trial counsel failed to object to leading questions the prosecutor asked of the State's main witness, which resulted in two different answers; (16) trial counsel failed to file a motion regarding his relationship with Lafary, as trial counsel had told Barner before trial that he had been friends with Lafary "for quite a few years"; (17) trial counsel failed to report the State tampering with evidence when it removed factory tint from the windows of Barner's vehicle before it took photographs of the vehicle; (18) trial counsel failed to investigate the crime scene in that "[t]aking a photo of the impact on the mud next to the pond where the two bodies on top of one another fell would show victim and defendant landed on land, not in the water, thereby—therefore showing victim lied and his testimony would have been impeached" and that grass stains on Barner's pants could have only come from a patch of grass in the field next to the pond, not the pond itself; (19) trial counsel inadequately prepared for trial because he had another trial the day before Barner's trial; and (20) trial counsel failed to present mitigating evidence at sentencing.

¶ 18        The circuit court then stated that the only claim Barner made that required further exploration was his speedy trial claim, which was Barner's point number 12. Regarding all of the other claims, the court noted that it was present for the jury trial, that it had observed trial counsel "valiantly" representing Barner, and that "the large majority" of Barner's claims were matters of trial strategy that could not support a claim of ineffective assistance of trial counsel. After denying all claims other than the speedy trial claim, the court continued the hearing so trial counsel could be questioned regarding that claim.

¶ 19        On August 11, 2020, Barner's postconviction petition was advanced to the second stage.

¶ 20       On October 16, 2020, the hearing resumed on Barner's speedy trial claim. Trial counsel was called to the stand and was questioned by the court and Barner. The court then asked the State if they had any questions for trial counsel, and the prosecutor stated that "I do not believe at this point in the proceedings that I have the ability to examine any witnesses." Next, the court gave Barner the opportunity to present argument, which he did. The court then asked for a response from the State. The following exchange took place between the prosecutor and the court:

"[THE PROSECUTOR]: Your Honor, what I would advise as an officer of the court is that it is my understanding that the only remaining issue before the Court from the defendant's motion is a speedy trial issue.

And again, just in my position as an officer of the court, I would advise the Court that there were 163 days between the date of the defendant's arrest and the first day of his jury trial, which commenced on October 21st of 2015.

In addition, the court file reflects that on September 18th, 2015, the matter was continued to a Final Pretrial or to begin trial on October 20th, which then subtracted 33 days from the speedy trial calculation.

The record does reflect that the defendant was present and did knowingly waive or toll speedy time demands at that September 18th, 2015, hearing.

I would further advise the Court that the defendant's Preliminary Hearing in this matter was held on June 3rd of 2015. The case was subsequently set for Pretrial on August 3rd, 2015.

The defendant would have been present at the time of his Preliminary Hearing, and there was an intervening Pretrial Conference which the case could have been set on.

The document that I have received from the Circuit Clerk's Office indicates that in 2015, there was a Pretrial Conference that took place on July 6th, 2015. The defendant would have been present in court when the matter was set for the August Pretrial Conference rather than the July Pretrial Conference; and that agreement to continue beyond the July Pretrial Conference, I believe, should also toll speedy trial.

With even just taking out the time between July 6th and August 3rd, that is a period of 29 days, which brings us well within the speedy trial period of 120 days.

Again, I do not state this for argument purposes. It is solely to advise the Court of the timeline that appears to be reflected in the court file.

THE COURT: And that's what I wanted to hear from [trial counsel], whether you were present in court, by his recollection. And from what I understand, Mr. Barner, you were not in court and did not acquiesce to that continuance from the July court date to continue the case till the September 18th court date.

So, I'm finding that that delay should not be attributable to you, although on September 18th, the matter was continued at your request to October 20th; and you waived speedy trial demand. There is a record of that, I believe, according to the docket entry.

8

And so, I am finding by my math that we're at 118 days, I believe, at the time of trial, although I recognize there was an additional 30 days that would not be attributable to you, that could be attributed to you for the Pretrial that you skipped going to August 3rd instead of the Pretrial that was done previously.

So, based on my <u>Krankle</u> [*sic*] preliminary inquiries, I am determining that the claim lacks merit or pertains only to that of trial strategy as to the speedy trial demand, that the Court need not appoint new counsel for that purpose; and I'm denying the pro se motion."

¶ 21    Barner appealed.

¶ 22                                    II. ANALYSIS

¶ 23    On appeal, Barner argues that the circuit court erred when it denied his claims of ineffective assistance of trial counsel after a *Krankel* hearing.

¶ 24    *Krankel* and its progeny have resulted in a common-law procedure for addressing a defendant's *pro se* posttrial claims of ineffective assistance of counsel. *People v. Roddis*, 2020 IL 124352, ¶ 34.

"Under the common-law procedure, a *pro se* defendant is not required to file a written motion but need only bring his or her claim to the trial court's attention. [*People v.*] *Ayres*, 2017 IL 120071, ¶ 11. New counsel is not automatically appointed in every case when a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. *People v. Moore*, 207 Ill. 2d 68, 77 (2003). Rather, when a defendant makes such a claim, the court should first examine the factual basis of the

9

defendant's claim. *Id.* at 77-78. If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. *Id.* at 78. However, if the allegations show possible neglect of the case, new counsel should be appointed. *Id.*

New counsel would then represent the defendant at the hearing on the *pro se* ineffective assistance of counsel claim. Appointed counsel can independently evaluate the claim and avoid the conflict of interest that trial counsel would have in trying to justify his or her own actions contrary to the defendant's position. *Id.* (citing *People v. Chapman*, 194 Ill. 2d 186, 230 (2000))." *Roddis*, 2020 IL 124352, ¶¶ 35-36.

¶ 25    The purpose of a *Krankel* hearing is to encourage the circuit court to fully address the ineffective-assistance-of-counsel claims a *pro se* defendant raises in a posttrial motion and thereby limit the issues on appeal. *Id*. ¶ 34. During the hearing,

"some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim. Trial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations. [Citations.] A brief discussion between the trial court and the defendant may be sufficient. [Citations.] Also, the trial court can base its evaluation of the defendant's *pro se* allegations of

10

ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face. [Citations.]" *People v. Moore*, 207 Ill. 2d 68, 78-79 (2003).

¶ 26 Barner's first argument is that the circuit court erred when it denied his ineffective assistance claim related to trial counsel's failure to file a timely posttrial motion. This argument is not an attack on the adequacy of the inquiry conducted by the court, but rather on the merits. If the circuit court determines the merits of a defendant's *Krankel*-hearing claim, we review the matter for manifest error. *People v. Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Id.*

¶ 27 Barner alleges that trial counsel possibly neglected his case by failing to file a timely posttrial motion. First, he claims, without support, that because the circuit court advanced his postconviction petition to the second stage, it should have allowed his claim in the interest of judicial economy. His lack of support for this argument results in its forfeiture. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 28 Second, he claims that trial counsel's failure to file a timely posttrial motion "drastically narrowed Barner's available issues on appeal." He claims that had he been able to raise his reasonable-doubt arguments regarding aggravated battery and aggravated fleeing earlier than on appeal, he would have won on those arguments and therefore faced fewer felony convictions at sentencing. We reject this argument outright, as Barner has provided no argument that his attempted first degree murder sentence was longer than it would have been had that been the only conviction he faced at sentencing.

11

¶ 29        Barner also claims that he was unable to raise a hearsay challenge to Lafary's statement after the incident had ended that "this fucker tried to drown me." We also reject this argument outright, as there was ample corroborating evidence that Lafary had made the same statement when he and Barner were struggling in the water during the incident. Barner's argument fails to show any benefit to his being able to make a hearsay challenge on direct appeal to Lafary's after-the-fact statement.

¶ 30        Barner ends his argument on this issue with a statement that "[c]ounsel's possible neglect in not timely filing a motion for new trial thus deprived Barner of at least one potentially meritorious issue for appeal." Having held that Barner has in fact not shown any potentially meritorious arguments that could have been raised in a timely posttrial motion, we hold that the circuit court did not err when it denied Barner's claim of ineffective assistance of counsel regarding trial counsel's failure to file a timely posttrial motion.

¶ 31        Barner's second argument on appeal attacks the adequacy of the circuit court's *Krankel* hearing, first arguing that the court's inquiry was inadequate because it was cursory, only addressed one of the claims read by him at the hearing and did not ask questions about the facts underlying the claims except for the speedy trial claim.

¶ 32        The question of whether the circuit court conducted a proper *Krankel* hearing is reviewed *de novo*. *Jackson*, 2020 IL 124112, ¶ 98.

¶ 33        Contrary to Barner's argument, the circuit court is not *required* to undertake any specific procedures when assessing *Krankel* claims. In this regard, we reiterate that our supreme court held in *Moore* that "the trial court can base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the

12

insufficiency of the defendant's allegations on their face." *Moore*, 207 Ill. 2d at 79; see also *Roddis*, 2020 IL 124352, ¶ 56.

¶ 34 Barner then points to specific claims that he alleges "demanded the court below do more than it did." He begins with his claim regarding trial counsel's failure to file a timely posttrial motion. However, we have already rejected that argument on its merits. *Supra* ¶ 30.

¶ 35 Regarding Barner's next claims, we first reiterate that this court remanded the case for a *Krankel* inquiry on his attempted first degree murder conviction alone. *Barner*, 2018 IL App (3d) 160023-U, ¶ 81. We reject any claims Barner posits on this issue that do not relate to that conviction, including the pictures of his vehicle without tint on the windows, whether his vehicle had overheated in a manner consistent with speeding, and the manner in which the struggle between Barner and Lafary was broken up.

¶ 36 We additionally emphasize that this court found in Barner's direct appeal that he was proven guilty beyond a reasonable doubt of attempted first degree murder. *Id.* ¶¶ 40-42. Thus, we reject any claims Barner posits on this issue that are clearly negated by our previous decision, including that trial counsel did not investigate the crime scene and did not present a photograph that showed Lafary's uniform was dry after the struggle.

¶ 37 We also reject Barner's claim that the circuit court should have inquired further

¶ 38 into his claim of ineffective assistance for failing to seek a change in venue. Barner has not provided any support or argument on this claim; accordingly, it is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 39 We do, however, find it problematic that the circuit court did not conduct a further inquiry into Barner's claims that trial counsel was ineffective for failing to present any mitigating evidence at sentencing and for failing to act upon the conflict of interest he had due to his

13

friendship with Lafary. Regarding the former, while the failure to present mitigating evidence at sentencing can often be a strategic decision insulated from ineffective-assistance-of-counsel claims, "where counsel has neglected to conduct a proper investigation into mitigating circumstances, the failure to introduce mitigating evidence cannot be attributed to strategy." *People v. Coleman*, 168 Ill. 2d 509, 535 (1995). Here, there was no indication as to why trial counsel did not present any mitigating evidence at sentencing. While that decision may not have constituted ineffective assistance, such a determination cannot be made unless more information is obtained.

¶ 40    Regarding the latter, the sixth amendment right to effective assistance of counsel includes "assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations." *People v. Spreitzer*, 123 Ill. 2d 1, 13-14 (1988). The importance of this constitutional right warranted an inquiry by the circuit court, and we therefore hold the circuit court's *Krankel* inquiry was inadequate in this regard.

¶ 41    Additionally, we agree with Barner that the circuit court's *Krankel* hearing was inadequate for another reason—that the court improperly allowed the State to participate at the hearing. Our supreme court has instructed that "the State should never be permitted to take an adversarial role against a *pro se* defendant at the preliminary *Krankel* inquiry." *People v. Jolly*, 2014 IL 117142, ¶ 38.

> "the purpose of *Krankel* is best served by having a neutral trier of
> fact initially evaluate the claims at the preliminary *Krankel* inquiry
> without the State's adversarial participation, creating an objective
> record for review. This goal, however, is circumvented when the
> circuit court essentially allows the State to bias the record against a

14

*pro se* defendant during the preliminary *Krankel* inquiry. A record produced at a preliminary *Krankel* inquiry with one-sided adversarial testing cannot reveal, in an objective and neutral fashion, whether the circuit court properly decided that a defendant is not entitled to new counsel. [Citation.]" *Id.* ¶ 39.

In this case, the circuit court solicited the prosecutor's input at the hearing. While the prosecutor claimed she was not advancing an argument when she, *inter alia*, explained relevant dates and continuances related to Barner's speedy trial claim, we find the prosecutor's claim disingenuous. The prosecutor essentially argued that she believed that Barner was responsible for the delay in bringing the case to trial such that there was no speedy trial violation. For that reason, we decline to hold that the prosecutor's participation was *de minimis*. See *Jackson*, 2020 IL 124112, ¶ 114 (indicating that *de minimis* participation by the State at a *Krankel* hearing does not constitute reversible error). The circuit court should never have requested input from the prosecutor at the *Krankel* hearing and she should not have offered any input.

¶ 42 In sum, we reject all of Barner's assertions that the circuit court failed to conduct an adequate inquiry into his ineffective-assistance claims *except* for his claims on the failure to present mitigating evidence at sentencing and on the potential existence of trial counsel's conflict of interest. On those two claims—and only on those two claims—we hold that the circuit court erred. Accordingly, we remand the case for a proper *Krankel* inquiry on those two claims— without the State's input and before a different judge (see *Jolly*, 2014 IL 117142, ¶¶ 38, 46).

¶ 43                                             III. CONCLUSION

¶ 44 The judgment of the circuit court of Fulton County is affirmed in part and reversed in part, and the cause is remanded with directions.

15

¶ 45   Affirmed in part and reversed in part; cause remanded with directions.