**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220528-U

Order filed October 30, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0528 Circuit No. 17-CF-810 |
| ANTHONY D. TILLMON, | ) ) ) | Honorable John J. Kinsella, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Peterson and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The circuit court did not conduct an adequate *Krankel* inquiry.

¶ 2    Defendant, Anthony D. Tillmon, appeals his conviction for first degree murder arguing the Du Page County circuit court failed to conduct an adequate *Krankel* inquiry. We remand with directions.

¶ 3                  I. BACKGROUND

¶ 4    On May 16, 2017, defendant was charged with five counts of first degree murder (720 ILCS 5/9-l(a)(l) (West 2016)) stemming from the April 21, 2017, shooting of Eduardo Munoz. At a bench trial on May 3, 2022, Daniel Schuster testified that at approximately 4 p.m. on April 21, 2017, he was travelling eastbound on Interstate 88 in the far right lane behind Munoz's semitruck. Defendant's flatbed tow truck was in the next lane to the left of Munoz. Schuster observed Munoz and defendant's vehicles move as close as possible to each other, cross over into the other lane, and speed up and slow down for one mile. The vehicles were travelling around 55 to 60 miles per hour. Schuster did not see either vehicle hit the other. After passing the two vehicles, Schuster looked in his mirror and saw Munoz and defendant pointing at each other. Munoz's semitruck nearly lost control before pulling over to the right shoulder. Schuster did not hear any gunshots.

¶ 5    Anthony Falconio testified he was driving eastbound on Interstate 88 at the time of the incident. Falconio saw the semitruck and tow truck in front of him. The semitruck was moving into the left lane preparing to merge. Falconio was driving the speed limit and the tow truck was driving just under the speed limit at the time. Falconio believed the semitruck driver realized there was another vehicle in that lane while attempting to merge, causing it to move back into the right lane.

¶ 6    Falconio saw defendant in the tow truck throw up his hands after the semitruck nearly cut him off. The tow truck swerved toward the semitruck three times. The third time, Falconio believed the two vehicles made contact and he heard a loud noise. The semitruck pulled over to the right shoulder and came to a stop. The tow truck increased its speed and exited the interstate.

¶ 7    An Illinois State trooper dispatched to the scene at 4:58 p.m. found Munoz's semitruck on the shoulder of the interstate with the engine still running. The driver's side door window was

shattered, the driver's door was open, and Munoz's foot was hanging outside the door. Munoz was laying inside the cab. He had no pulse and was not breathing. Munoz was transported to the hospital where he was pronounced dead. A forensic pathologist testified Munoz was shot three times which caused his death. She further testified defendant's tow truck tested positive for gunshot residue.

¶ 8        Defendant's girlfriend at the time of the incident testified she picked defendant up at 5:15 p.m. at a Walmart parking lot. She drove him to the tow yard where his car was parked. Defendant's coworker testified he drove defendant back to the Walmart parking lot to retrieve the tow truck. The coworker also testified defendant had purchased a gun and showed it to him before the incident.

¶ 9        Brian Booker testified he was the owner of the towing company that defendant worked for at the time of the incident. He testified employees were prohibited from carrying guns or leaving their trucks in a public parking lot. Employees were expected to call the towing company if they were involved in a traffic accident or had an altercation with another driver. Defendant did not call the company to report the April 21, 2017, incident. Booker stated the trucks were equipped with global positioning system (GPS) data, and the GPS data showed defendant was in the area at the time of the incident. The GPS data was admitted into evidence and the State rested.

¶ 10       Defense counsel called a pharmacologist who was admitted as an expert. The pharmacologist testified dextromethorphan is used therapeutically as a cough suppressant, but in large doses may cause euphoria, dysphoria, and perceptual disturbances. At very high levels, it may have effects similar to ketamine or phencyclidine. Munoz's blood showed a concentration of dextromethorphan 50 times the normal therapeutic concentration. The pharmacologist

estimated Munoz had consumed 10 to 20 times the recommended dose and opined that the amount in his blood could cause hyper aggressive behaviors and hallucinations.

¶ 11 Defense counsel called Munoz's fiancée regarding a domestic violence incident from 2009. She testified that she did not remember any incident around that time. Defense counsel introduced as impeachment evidence a police report stating that during a traffic stop in 2009, Munoz's fiancé exited the vehicle Munoz was driving and began yelling that Munoz was trying to kill her.

¶ 12 Defendant testified that he had been a tow truck driver for 9 to 10 years. On the date of the incident, defendant was returning from a towing job. He was in standstill traffic when a semitruck began to merge into him at "[p]robably two to three" miles per hour. He believed the middle of the semitruck's trailer rubbed against the tow truck's mirror. Defendant honked the horn and flashed his lights. He then drove up alongside the semitruck. Munoz was hanging out of the semitruck yelling at defendant. Defendant took photographs on his phone. Munoz jerked the semitruck toward defendant and hit the tow truck's side mirror. Munoz reached out holding an object. Defendant could not tell what the object was.

¶ 13 Defendant moved his tow truck to the left lane and slowed down. Defendant believed Munoz was attempting to move his semitruck close to defendant before swerving right in order to swing his trailer to the left, hitting defendant's tow truck. Defendant believed Munoz was going to kill him. The two vehicles were travelling at approximately 15 to 20 miles per hour at this time. Defendant grabbed his firearm and fired at Munoz. Defendant sped up and exited the interstate to get away from Munoz. He did not know whether any bullets hit Munoz. Defendant attempted to reenter the interstate to check the scene of the incident but could not find an entrance. He eventually stopped to check the damage to his truck, which was not significant. The

4

mirror was cracked, and paint was scraped off the side of the tow truck. Defendant called his girlfriend and had her meet him at Walmart. He did not tell her about the incident because he did not know whether he shot Munoz. He only learned Munoz died several days later when the police searched defendant's house. Defendant turned himself in when he learned the police were looking for him.

¶ 14        In closing arguments, defense counsel argued that defendant acted in self-defense and suggested defendant could be guilty of second degree murder due to imperfect self-defense. On May 18, 2022, the court found defendant guilty of all five counts of first degree murder. The court determined defendant was unreliable, noting his testimony that he came to a stop on the highway was contradicted by two witnesses who testified he and Munoz were travelling at or above the speed limit during the altercation. The court also found there was no evidence Munoz did anything wrong besides his initial error of attempting to merge into defendant's lane. The court concluded that, following Munoz's mistake, defendant challenged him before shooting him out of anger, not fear.

¶ 15        Defendant filed a motion for a new trial on June 15, 2022. At the hearing on the motion, counsel stated defendant wished to raise a claim of ineffective assistance of counsel. On October 5, 2022, the court conducted a preliminary *Krankel* inquiry. Relevant to this appeal, defendant argued counsel was ineffective for failing to (1) take photographs of the tow truck's mirror which would have helped prove defendant's version of events; (2) introduce a statement from defendant's mother where she told police that defendant's tow truck had been hit; (3) admit GPS data showing the tow truck's speed to show that they were at a standstill at the time; and (4) introduce dash camera footage from the tow truck which would have corroborated defendant's version of events.

5

¶ 16    The court asked trial counsel whether he was aware of any dash camera footage. Counsel believed any footage was in the State's possession, so the State would have a duty to produce it. Counsel further believed, and the court agreed, several of the routes of investigation by counsel would not necessarily produce evidence helpful to defendant. In that event, counsel would have had a duty to produce the evidence, even if harmful to defendant. Counsel further indicated that the GPS data was already admitted by the State. Regarding the statement from defendant's mother, the court did not ask counsel specifically about the issue but instead asked, "Any other response to any of the other points?" Counsel did not discuss this point.

¶ 17    The court found defendant failed to articulate ineffective assistance of counsel and did not appoint new counsel for a *Krankel* hearing. The court believed, "[t]o the extent that there were decisions made about the evidence and about the arguments, all of it is attributable to strategy ***." Defendant was sentenced to 50 years' imprisonment and 3 years' mandatory supervised release. Defendant appealed.

¶ 18                                   II. ANALYSIS

¶ 19    On appeal, defendant argues the court failed to conduct an adequate preliminary *Krankel* inquiry. Specifically, defendant argues the court did not sufficiently inquire into whether counsel was ineffective for failing to (1) take photographs of the tow truck's mirror; (2) introduce a statement from defendant's mother; (3) admit GPS data showing the tow truck's speed; and (4) introduce dash camera footage.

¶ 20    A defendant has the constitutional right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. If a defendant raises a *pro se* posttrial claim that he was denied his constitutional right to the effective assistance of trial counsel, the court must inquire further into defendant's allegations. *People v. Krankel*, 102 Ill. 2d 181, 189 (1984);

*People v. Roddis*, 2020 IL 124352, ¶ 34. The first step in hearing those claims requires the circuit court to make a preliminary inquiry to examine the factual basis of the defendant's claim. *People v. Horman*, 2018 IL App (3d) 160423, ¶ 24. New counsel is appointed to represent defendant in a full hearing if the allegations show possible neglect of the case. *Id.*

¶ 21        A preliminary inquiry requires the court conduct " 'some type of inquiry into the underlying factual basis' " of defendant's claims. *People v. Ayres*, 2017 IL 120071, ¶ 11 (quoting *People v. Moore*, 207 Ill. 2d 68, 79 (2003)). "Specifically, the 'trial court must conduct an adequate inquiry ***, that is, inquiry sufficient to determine the factual basis of the claim.' " *Id.* (quoting *People v. Banks*, 237 Ill. 2d 154, 213 (2010)). Generally, "some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary." *Moore*, 207 Ill. 2d at 78. Where the claims are based on matters outside the record, an inquiry is incomplete where it fails to develop the factual record needed to resolve the claims. *People v. McLaurin*, 2012 IL App (1st) 102943, ¶ 44. "We review whether the trial court conducted an adequate inquiry *de novo*." *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 14.

¶ 22        Decisions regarding what witnesses to call or what evidence to present at trial are ultimately left to trial counsel as matters of trial strategy and generally not subject to attack on the grounds of ineffective assistance of counsel. *People v. Reid*, 179 Ill. 2d 297, 310 (1997). However, only sound trial strategy is afforded this protection. *Id.* Whether counsel's decision to introduce a particular witness or piece of evidence at trial was the result of sound trial strategy will often depend on facts not in the record. See, *e.g.*, *People v. Barner*, 2022 IL App (3d) 200433-U, ¶ 39 (finding a preliminary *Krankel* inquiry inadequate where the record did not indicate why counsel failed to present any mitigating evidence at sentencing); see also *People v.*

*Brown*, 2022 IL App (1st) 191628-U, ¶ 70 (finding an inquiry inadequate where it was not possible to discern from the record whether trial counsel was aware of certain testimony).

¶ 23 Here, the inquiry was inadequate as it did not sufficiently develop the factual basis necessary to make a determination as to the ineffectiveness of counsel. First, it is not clear why counsel did not introduce photographs showing the damage to the tow truck, or whether counsel even examined the tow truck. Defendant's theory was that Munoz was the aggressor, striking defendant's tow truck with his semitruck. The condition of the tow truck and signs of physical damage were of clear significance to that defense, and the court should have inquired further as to whether counsel's decision here was the result of sound trial strategy following an adequate investigation.

¶ 24 Second, and for the same reasons, the inquiry into counsel's decision not to introduce evidence of defendant's mother's statement was insufficient. There is nothing in the record indicating whether counsel was aware of the statement and its contents, or why he elected not to admit it into evidence. The court did not inquire into this issue at all. The State argues "[t]rial counsel was presumably in possession of the police reports," so the decision not to call the mother as a witness was the result of sound trial strategy. However, it is precisely because we are left speculating as to this type of information when the court did not question it further that the matter must be remanded for further inquiry.

¶ 25 Third, counsel stated the State had already admitted the GPS data into evidence. But the GPS data admitted at trial did not show the tow truck's speed. A major discrepancy between the State's witnesses and defendant's testimony was what speed the tow truck and semitruck were travelling at the time of the incident. Defendant testified they were at a near standstill and the shooting occurred while they were travelling around 20 miles per hour, while the State's

8

witnesses testified the vehicles were travelling much faster at the time of the incident. The GPS data could have bolstered defendant's credibility as against the other witnesses. Nonetheless, whether such GPS data existed, counsel's steps to determine whether it existed, and counsel's decision not to procure and admit such evidence at trial were appropriate areas of inquiry that were not pursued here. The State again argues that "presumably, defense counsel would have pointed to the portion of the GPS that indicated a slow speed if it were either available or helpful." However, the court should have inquired further so the record was clear regarding counsel's investigation into the speed the vehicles were travelling.

¶ 26      Fourth, the record does not reveal what steps counsel took in independently acquiring the dash camera footage. While counsel did state he would have had a duty to produce any evidence, even if harmful, it is unclear how that would justify failing to pursue evidence counsel believed to already be in the State's possession. As defendant argues on appeal, counsel could have filed a motion to compel the State to tender the video. See, *e.g.*, *People v. Beaman*, 229 Ill. 2d 56, 72 (2008). The reason no such motion was filed is not readily discernable from the record.

¶ 27      We therefore remand for the limited purpose of allowing the circuit court to make a more thorough inquiry into the issues raised by defendant. See *McLaurin*, 2012 IL App (1st) 102943, ¶ 53. In remanding this case, we note that, after an adequate preliminary inquiry, the court may base its *Krankel* decision on either the factual or legal merits of defendant's claim of ineffective assistance of counsel. *Roddis*, 2020 IL 124352, ¶¶ 55, 61.

¶ 28                                                    III. CONCLUSION

¶ 29      The judgment of the circuit court of Du Page County is remanded with directions.

¶ 30      Remanded with directions.