NOTICE

Decision filed 06/04/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220483-U

NO. 5-22-0483

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 19-CF-1953 |
| | ) | |
| ANTUAN ALEXANDER, | ) | Honorable |
| | ) | Zina R. Cruse, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

JUSTICE CATES delivered the judgment of the court.
Justices Welch and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: We remand this case with directions for the circuit court to conduct a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny, because the circuit court did not conduct an inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel.

¶ 2    After a bench trial, the defendant, Antuan Alexander, was found guilty of criminal sexual assault, unlawful restraint, domestic battery, and interfering with the reporting of domestic violence. The defendant was sentenced to concurrent terms of six years in the Illinois Department of Corrections (IDOC) for criminal sexual assault, two years for unlawful restraint, two years for domestic battery, and 364 days for interfering with a report of domestic violence. The defendant appeals the issues of whether the circuit court erred by finding the defendant fit to stand trial, whether the defendant was denied his right to present a complete defense where he was barred

1

from raising a consent defense, and whether the circuit court erred by failing to hold a preliminary *Krankel* inquiry after the defendant criticized his attorney's performance.

¶ 3    For the following reasons, we remand this case to the circuit court for a preliminary *Krankel* inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel. Because we are remanding this matter for a preliminary inquiry, we need not address the defendant's remaining issues on appeal.

¶ 4                                I. BACKGROUND

¶ 5    On December 22, 2019, the police were dispatched to an apartment complex in response to a noise disturbance. The caller reported an argument where a female had yelled for the police. The incident involved the defendant and his girlfriend, Sheila Brown. Brown informed the police officer that the defendant had thrown her to the ground, torn her clothes, and put his hand inside of her. Upon further investigation, the police officers found the defendant hiding in a pile of leaves near Brown's apartment. The following day, the defendant was charged by information with criminal sexual assault with force (720 ILCS 5/11-1.20(a)(1) (West 2018)), unlawful restraint (720 ILCS 5/10-3 (West 2018)), domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2018)), resisting or obstructing a peace officer (720 ILCS 5/31-1(a) (West 2018)), and interfering with the reporting of domestic violence (720 ILCS 5/12-3.5(a) (West 2018)).

¶ 6    The circuit court held a bench trial on July 14, 2021. During the trial, the victim, Sheila Brown, testified that she had been dating the defendant for a couple of months prior to the incident which occurred on December 22, 2019. The defendant and Brown attended Brown's work Christmas party on that date, and then returned to Brown's apartment. Brown testified that she told the defendant that he was "acting too clingy" at the party. The defendant then "jumped up" and ran towards Brown. Brown told the defendant to leave and threatened to call the police. The

2

defendant took Brown's phone and threw her to the ground. Brown testified that she screamed "let me go because you're hurting me."

¶ 7    Brown went to her bedroom to find her other phone to call 911. The defendant followed her, took the second phone, threw Brown on the bed, and said, "I know what you want." Brown testified that the defendant "proceed[ed] to take and rip my underwear off of me. He stuck his hand between my legs." Brown asked the defendant, "Why? Why are you doing this? I've been molested before. You're hurting me."

¶ 8    Brown testified that the defendant then let her go and she put clothes on. Brown went into her front room and the defendant grabbed her again. He would not let her leave. Brown testified that she was scared, cried out for help, and to call the police. Brown told the defendant that she could not breathe, and he let her sit on the porch. Brown then ran from the porch, down the stairs, to her neighbor's apartment to have her call the police. The police, however, had already arrived, and Brown asked the police officer for help.

¶ 9    On cross-examination, Brown testified that she had a sexual relationship with the defendant. Defense counsel began to reference a letter marked as Defendant's Exhibit 1 and the State objected. The State claimed that it was a discovery violation because they were not shown the letter until the morning of the trial. The circuit court proceeded to review the letter and allowed the defense to question Brown regarding the letter. Brown recognized the letter and testified that she wrote the letter to the defendant when he first went to jail. Brown read a portion of the letter which stated,

> "You know I never meant for none of this to happen. I promise I was scared, didn't know what to do. I know you would never try to hurt me, but that night was something different. I miss you."

3

¶ 10    When defense counsel offered the letter into evidence, the circuit court questioned the defense on the timing of the receipt of the letter. Defense counsel informed the court that he had received the letter that morning and had learned of the letter the day before. The defendant then spoke to defense counsel off the record and defense counsel clarified that he was aware of the letter in February of 2020, and he had not informed the State of the letter at that time.

¶ 11    Defense counsel once again offered the letter into evidence, and the circuit court questioned the purpose of admitting the letter. The circuit court then questioned Brown on what she meant by "but that night was different." Brown testified that night was different by "the way he acted, the things he did to me, how he assaulted me. Like, he was a different man." Defense counsel argued that Brown's statement that the defendant "would never try to hurt her" was exculpatory. The circuit court found that the letter was not admissible.

¶ 12    The circuit court found the defendant guilty as to criminal sexual assault by force, unlawful restraint, domestic battery, and interference with the report of domestic violence. The circuit court found the defendant not guilty to resisting or obstructing a peace officer.

¶ 13    The defense raised a posttrial motion claiming the circuit court erred in refusing a material piece of evidence, Defendant's Exhibit 1, a letter written by the victim to the defendant. The defendant was prohibited from impeaching Brown with the letter that she wrote to the defendant while he was in custody. The circuit court denied the defendant's posttrial motion and proceeded to the sentencing portion of the hearing.

¶ 14    During the sentencing hearing, the defendant presented two letters. The first letter, Defendant's Exhibit 1, was the letter from Brown to the defendant that the circuit court found inadmissible during the trial. In the second letter, Brown expressed regret, and said that she loved the defendant and did not want the defendant to be in trouble for what they went through.

4

¶ 15 The defendant presented a statement in allocution where he denied committing the crimes. He spoke in tongues for a portion of his statement. The defendant additionally criticized the court system and accused the court, the State, and his attorney of being involved in a conspiracy against him. The defendant started to make a statement against his attorney and the circuit court stated, "Leave him alone (indicating [defense counsel])," and to "[k]eep going" with his statement. The circuit court then indicated that it was having a difficult time hearing the defendant, and the following statements were made:

> "THE COURT: Your voice is going down again. I think what?
> THE DEFENDANT: You don't have it together. None of us have it together.
> THE COURT: Oh.
> THE DEFENDANT: We need Christ.
> You sit here to represent me, and not say anything? You had these letters when I came over here in February the 18th.
> THE COURT: Are you talking to me? You're supposed to be talking to me.
> THE DEFENDANT: February 18th, I gave him those letters. The deal that you offered me was plead guilty to this, I can go home. It's a game, a chess game you all play in this county jail behind closed doors. Conference that video. 'This is what the State is offering you, so take this, and you will go home.'
> No, I'm going to ride it to the end, because I didn't do this."

¶ 16 The circuit court sentenced the defendant to six years in the IDOC followed by three years of mandatory supervised release (MSR), and he was required to register as a sex offender for the charge of criminal sexual assault. The defendant was sentenced to two years in the IDOC followed by one year of MSR for unlawful restraint, and two years in the IDOC followed by four years of MSR for domestic battery, and those convictions run concurrently. The defendant additionally received credit for time served of 364 days for the misdemeanor of interference with the report of domestic violence.

5

¶ 17    The defendant filed a motion to reconsider the sentence and included an argument that the defendant had severe mental and emotional issues. The circuit court denied the motion to reconsider the sentence. This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, the defendant argues that he was denied his right to present a complete defense due to his counsel's failure to raise an affirmative defense of consent, and that the circuit court erred by failing to hold a preliminary *Krankel* inquiry after the defendant criticized his defense counsel's performance. We note that the defendant raised but withdrew an additional argument regarding the circuit court finding the defendant was fit based on the parties' stipulation.

¶ 20    Criminal defendants have a constitutional right to effective assistance of counsel. *People v. Hale*, 2013 IL 113140, ¶ 15. Claims of ineffective assistance of counsel are governed by a two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to establish a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance resulted in prejudice. *People v. Hughes*, 2012 IL 112817, ¶ 44.

¶ 21    The defendant argues that during the sentencing hearing he raised a *pro se* allegation criticizing his attorney's performance for failing to timely disclose evidence which should have triggered a *Krankel* inquiry. See *People v. Krankel*, 102 Ill. 2d 181 (1984). The defendant further argues that the circuit court failed to conduct any type of preliminary inquiry into the defendant's claim of ineffective assistance of counsel. In response, the State argues that the defendant's conspiratorial accusations did not give rise to a colorable claim of ineffective assistance of counsel that required the circuit court to engage in a preliminary *Krankel* inquiry.

6

¶ 22    The *Krankel* inquiry was developed to address a *pro se* posttrial motion alleging ineffective assistance of counsel. *People v. Roddis*, 2020 IL 124352, ¶ 34. When a defendant makes a claim of ineffective assistance of counsel, the circuit court should first examine the factual basis of the claim. *Roddis*, 2020 IL 124352, ¶ 35. If the circuit court determines that the basis of the claim is a matter of trial strategy or if the claim lacks merit, then the motion may be denied. *Roddis*, 2020 IL 124352, ¶ 35. New counsel should be appointed if the allegations show possible neglect of the case. *Roddis*, 2020 IL 124352, ¶ 35. New counsel then represents the defendant at a hearing on the *pro se* claim of ineffective assistance of counsel. *Roddis*, 2020 IL 124352, ¶ 36.

¶ 23    The goal of the *Krankel* inquiry is "to facilitate the trial court's full consideration of a defendant's *pro se* claim and thereby potentially limit issues on appeal." *People v. Ayres*, 2017 IL 120071, ¶ 13. The circuit court initially evaluates the defendant's claims in a *Krankel* hearing which creates the necessary record for claims to be raised on appeal. *Ayres*, 2017 IL 120071, ¶ 13. If the circuit court failed to conduct any inquiry into the defendant's *pro se* claims, the case should be remanded for the circuit court to conduct the appropriate inquiry. *People v. Moore*, 207 Ill. 2d 68, 79 (2003).

¶ 24    To trigger a *Krankel* inquiry, "a *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention." *Moore*, 207 Ill. 2d at 79. A "clear" oral or written claim asserting ineffective assistance of counsel is sufficient to trigger the circuit court's duty to conduct the inquiry. *Ayres*, 2017 IL 120071, ¶ 18. It is not necessary for the defendant to use the phrase "ineffective assistance of counsel." *People v. Lobdell*, 2017 IL App (3d) 150074, ¶ 37. The defendant must at least mention his attorney to make a "clear claim" of ineffective assistance of counsel. *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 31. Whether the allegations of ineffective

7

assistance of counsel are sufficient to trigger a circuit court's duty to conduct a *Krankel* inquiry is a question of law subject to *de novo* review. *People v. Cook*, 2023 IL App (4th) 210621, ¶ 64.

¶ 25 During the trial, the circuit court found evidence to be inadmissible. Defense counsel acknowledged that he had received a letter from the defendant in February of 2020 and did not disclose the letter to the State prior to trial. During the defendant's posttrial motion, defense counsel argued that the inadmissible letter was material evidence.

¶ 26 We find that during the defendant's statement in allocution, he made allegations concerning his defense counsel's performance that were sufficient to trigger a preliminary *Krankel* inquiry. The defendant's statement to the circuit court referred to his counsel's failure to timely disclose evidence deemed inadmissible. The defendant indicated that he provided his attorney with letters from the victim on February 18, and defense counsel had encouraged the defendant to plead guilty. Although the defendant did not use the phrase "ineffective assistance of counsel," it was apparent that the defendant was frustrated with defense counsel's performance and believed that defense counsel had neglected his case.

¶ 27 The circuit court did not conduct a preliminary examination of the factual basis of the claim after the defendant brought the issue regarding his frustration with his attorney's performance to the circuit court's attention. Accordingly, we must remand this matter so that the circuit court may conduct the appropriate inquiry into the defendant's *pro se* allegations.

¶ 28 Because we are remanding this matter to allow the circuit court to conduct the proper inquiry, we decline to address the defendant's remaining claim on appeal. See *People v. Bell*, 2018 IL App (4th) 151016, ¶ 37. Depending on the result of the preliminary inquiry, the defendant's remaining claim may become moot. *Bell*, 2018 IL App (4th) 151016, ¶ 37. If the circuit court determines that the defendant received effective assistance of counsel, the circuit court shall deny

a new trial and leave standing the defendant's convictions and sentence. See *Krankel*, 102 Ill. 2d at 189. If the circuit court denies a new trial, the defendant may still appeal his assertion of ineffective assistance of counsel along with his other claim raised on appeal that we declined to address at this time. See *Krankel*, 102 Ill. 2d at 189.

¶ 29                                        III. CONCLUSION

¶ 30    For the foregoing reasons, we remand this matter to the circuit court of St. Clair County with directions that the court conduct a preliminary *Krankel* inquiry into the defendant's *pro se* posttrial allegations of ineffective assistance of counsel.

¶ 31    Remanded with directions.